Mark C. Comtois (*pro hac vice*)
mccomtois@duanemorris.com
**DUANE MORRIS LLP**
901 New York Avenue NW
Suite 700 East
Washington, DC 20001
Telephone: (202) 776-5240

Nicole K. McLaughlin (*pro hac vice*)
nkmclaughlin@duanemorris.com
Tyler R. Marandola (*pro hac vice*)
tmarandola@duanemorris.com
Brianna M. Vinci (*pro hac vice*)
bvinci@duanemorris.com
**DUANE MORRIS LLP**
30 S 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1198

Jennifer M. Lantz (SBN 202252)
jmlantz@duanemorris.com
**DUANE MORRIS LLP**
260 Homer Avenue, Suite 202
Palo Alto, CA 94301-2777
Telephone: 650-847-4150

*Attorneys for Plaintiff The Foundry Visionmongers Ltd.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **THE FOUNDRY VISIONMONGERS LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**ADOBE INC.,**<br><br>Defendant. | Case No. 5:26-cv-2121-NW<br><br>**FIRST AMENDED COMPLAINT FOR MONETARY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. This case concerns the intentional and deliberate infringement of The Foundry Visionmongers Limited d/b/a Foundry's ("Foundry") trademark rights by Adobe Inc. ("Adobe" or "Defendant").

2. Plaintiff Foundry has a thirty-year heritage in developing creative software and services for the media, entertainment, and gaming industries, and is known for its portfolio of award-winning content creation products.

3. Foundry owns longstanding rights in its distinctive FOUNDRY trademarks, both in the U.S. and globally, in connection with text, image, video, animation, and 3D content creation software and related goods and services, including rich media digital content creation software that leverages AI capabilities.

4. Foundry's products, including its AI-enabled, rich media digital content creation products, have attained great commercial success. They are used by major and independent studios for films, TV, and commercials specializing in visual effects (VFX), 3D modeling, rendering, animation and story development. They have been used in the development of major motion pictures, including the recently released and critically acclaimed *Dune: Part Two*.

5. Foundry's products have been recognized in the industry with significant praise, award nominations, and awards. Foundry's Nuke product won the Engineering Emmy® Award in 2020. In 2021, The Hollywood Professional Association awarded the Foundry team an Engineering Excellence Award for Nuke. In 2025, its Nuke CopyCat product was nominated for the Emerging Technology Award at the 23rd Annual VES Awards. Foundry's Nuke Stage won Best of Show at the 2025 NAB Show by TVBEurope. Foundry Nuke 17.0 won the Product of the Year Award at the 2026 NAB Show. And Foundry has received several other prestigious awards for its work across industries, including a 2006 Academy of Motion Picture Arts & Sciences Scientific and Engineering Award for Furnace; a 2018 Academy of Motion Picture Arts & Sciences Scientific and Engineering Award for its contributions to Nuke, and the 2021 Hollywood Professional Association Engineering Excellence Award for Foundry Nuke.

6. Defendant Adobe recently announced its own content creation models which are used to produce text, images, video, and other 3D content using AI capabilities. Remarkably, Defendant has decided to market these products using the FOUNDRY mark.

7. As set forth more fully below, Defendant's use of FOUNDRY is likely to cause consumer confusion, to the irreparable harm and detriment of Foundry and the substantial goodwill it has developed in its incontestable FOUNDRY marks. Defendant's conduct constitutes federal trademark infringement and federal unfair competition as well as trademark infringement and unfair competition under the common law of the state of California, and is a flagrant violation of Plaintiff's trademark rights.

## THE PARTIES

8. Plaintiff Foundry is a limited company organized under the laws of the United Kingdom with a principal place of business at 5 Golden Square, London, United Kingdom W1F9HT.

9. Defendant Adobe is a corporation organized under the laws of the state of Delaware with a principal place of business at 345 Park Avenue, San Jose, California 95110.

## JURISDICTION

10. This Court has subject matter jurisdiction under the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1338(a) and 1338(b). The Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a).

11. This Court has personal jurisdiction over Defendant because it has a principal place of business in California.

12. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because this is the judicial district where Defendant resides and/or a substantial part of the events giving rise to the claims occurred.

## DIVISIONAL ASSIGNMENT

13. Pursuant to Civil L.R. 3-2(c) and General Order 44, this action is assigned on a districtwide basis because it pertains to intellectual property rights.

## FACTS

**A. Foundry's Business and Trademarks**

14. Foundry was founded in 1996 and is a global leader in developing creative software and services for the media, entertainment, and gaming industries. Foundry's innovations in text, image, video, animation, and 3D content creation software and related goods and services are used to enhance and advance the art and technology of visual experience with creative leaders around the globe, including major feature film studios and post-production houses such as ILM, DNEG, Walt Disney Animation Studios, Wētā FX, Pixar, Marvel, Netflix, Framestore and Skydance Animation, as well as independent studios, film makers, animators, content creators, and the like. Foundry's software and products are also used by Fortune 2000 companies, industry professionals, and amateur users for purposes of branding, advertising, content making, and brand and product experiences.

15. In the context of the entertainment industry, Foundry's software serves the post-production stage of media and entertainment development. This is an essential stage during which VFX and animation professionals employ Foundry's goods and services to enhance productivity and ensure optimal outcomes in film, television, commercials, and other media.

16. Foundry deploys its decades of industry experience and innovation to provide solutions that solve complex visualization challenges to turn incredible ideas into reality. Artists around the world use Foundry's products to create breathtaking visual effects and animation on a wide range of feature films, TV, and commercials and advertising, and its software was integral in the making of every VFX Academy Award-winning film since at least as early as 2007.

17. Plaintiff's flagship product, Foundry Nuke, is a VFX application used to combine, layer, and manipulate footage into a finished shot, and is widely regarded as the industry standard for high-end film and television.

18. Foundry's website, www.foundry.com, displays Foundry's house marks along with the "Nuke" mark and product:




19. Foundry's house mark is also displayed prominently in the Nuke platform during the download process.




20. The FOUNDRY® Mark is also prominently displayed during the user's installation of the Nuke product, including during the license acceptance phase, the installation process, the product launch and login page, and the activation phase:


FOUNDRY
Activate device
You're activating Foundry Desktop Apps. Please make sure the code below is the same as displayed in the Foundry application's licensing window. Do not accept the sign in request unless you initiated it yourself.
Code
DSPM-HWLC
Activate
Reject


Nuke 17.0v2 Setup
License Agreement
Please review the license terms before installing Nuke 17.0v2.
FOUNDRY
END USER LICENSE AGREEMENT (EULA)
PLEASE READ THIS EULA CAREFULLY BEFORE ORDERING OR DOWNLOADING OR USING ANY SOFTWARE PRODUCTS OF FOUNDRY. YOUR ATTENTION IS PARTICULARLY DRAWN TO: (A)
If you accept the terms of the agreement, check this box and click Next. You must accept the agreement to install Nuke 17.0v2.
Print
Back
Next
Cancel


Nuke 17.0v2 Setup
Installing Nuke 17.0v2
FOUNDRY
Please wait while the Setup Wizard installs Nuke 17.0v2.
Status: Validating install
Back
Next
Cancel


NukeX 17.0v2
NukeX 17.0v2, 64 bit, built Apr 8 2026.
Copyright (c) 2026 The Foundry Visionmongers Ltd. All Rights Reserved.
Licensing
No License found for NukeX 17.0
More Information
Login License
Activate a Login License from your Foundry account
Local License
Install an RLM Nodelocked License or connect to a License Server
Try or Buy a License
Request a Trial or purchase a License for NukeX
CLOSE
LAUNCH NUKE NON-COMMERCIAL

21. The FOUNDRY® Mark also appears within the Nuke product:




22. Plaintiff also offers Mari (high-resolution 3D digital painting and texturing), Katana (look-development and lighting), Flix (story-development and storyboarding, with direct integration to third-party creative applications such as Adobe Photoshop), and Nuke Stage (built for virtual production). These products are similarly displayed on the www.foundry.com website along with Foundry's house marks:









23. Foundry is a trailblazer in the industry and has been developing content creation solutions with AI capabilities for years. Foundry's AI-capable, rich media digital content creation software and services are artist-centric, groundbreaking, and seamlessly integrated into existing production pipelines. These solutions have transformed the media and entertainment industries, and Foundry's products have experienced enormous commercial success.

24. Foundry has invested significant resources, financial and otherwise, to market its FOUNDRY branded products.

25. Plaintiff has invested significant resources to develop the goodwill associated with the FOUNDRY® Marks. The Foundry website attracts roughly 1.5 million unique users per year; its social-media channels collectively reach hundreds of thousands of subscribers and followers; and tens of thousands of additional users are trained on FOUNDRY® products through student licenses.

26. Approximately 60% of Plaintiff's revenue comes from enterprise customers spending more than $100,000 per year, while the other 40% comes from thousands of small and medium sized businesses and individuals.

27. Foundry employs Enterprise Sales Managers specifically to handle B2B sales, solution selling, and account management for large global studios and large companies. Foundry also utilizes an authorized partner network of local resellers globally to provide advice, support, and handle enterprise sales in local languages and time zones, and offers "Team Login" licensing, which provides floating license behavior managed by an administrative dashboard. These services are directed at large companies with many tens, or hundreds, of users.

28. In order to protect the goodwill associated with its brand, Foundry has taken steps to secure its intellectual property rights. This includes trademark rights.

29. Foundry owns longstanding rights in the FOUNDRY mark, both in the U.S. and globally, in connection with text, image, video, animation, and 3D content creation software and related goods and services, including software that leverages AI capabilities to create rich media digital content creation solutions.

30. The FOUNDRY mark is Foundry's house mark and has represented Foundry's primary identity for thirty years. The core of Foundry is its FOUNDRY® brand.

31. Foundry is the owner of the <FOUNDRY.COM> domain name, the FOUNDRY mark, FOUNDRY formative marks, and accompanying incontestable U.S. Trademark Registrations for these FOUNDRY marks, including but not limited to the following:

| Mark | Registration No. | Goods and Services | Registration Date |
|---|---|---|---|
| FOUNDRY | No. 5,619,985 | [International Class 009]: Pre-recorded tapes, pre-recorded cassettes, pre-recorded compact discs and pre-recorded digital versatile discs all featuring ] computer software, namely, tools for visual effects for entertainment films and video, computer software for cleaning film, computer software for cleaning digital film, computer software for analyzing, repairing and reconstructing digitised images, computer software for analyzing, repairing, reconstructing frames within sequences of digitised | December 4, 2018 |
| FOUNDRY. | No. 5,619,986 | | December 4, 2018 |
| FOUNDRY. | No. 5,619,987 | | December 4, 2018 |

| | | | |
|---|---|---|---|
| | | images, computer software for creating, viewing, editing, processing, manipulating, managing, storing, organizing, importing, and exporting digital images, digital artwork, graphics, text, and data, computer software for organising and viewing photographs, computer software for digital drawing, sketching and painting, computer software for 3D animation and visual effects, computer software for 3D content creation, computer software for design, sketching, 3D modelling and photo visualization related to concept and product design for entertainment films and video, computer software incorporating node-based, editorial and finishing tools, for creating visual effects for entertainment films and video, software for creating audio, video and/or image files in the field of computer operating systems, namely, creating a framework for time variable media, computer software adapted for teaching in the field of digital image creation and design, 3D animation and visual effects for entertainment films and video, electronic downloadable publications, namely, teaching materials in the field of digital image creation and design, 3D animation and visual effects; computer software, namely, computer software plug in tools for visual effects for entertainment films and video; computer software for cleaning film; and replacement parts for all the aforesaid goods<br><br>[International Class 042]: Writing, creating, developing, maintaining, and leasing of 3D animation and visual effects computer software; development of computer software applications; writing, creating, developing, maintaining and rental of 3D animation and visual effects software; development of 3D animation and visual effects software applications; design services relating to computer programs; computer services namely, providing non-downloadable software tools and toolsets for design, sketching, 3D modelling and photo visualization related to concept and product design for entertainment films and video; providing temporary use | |

| | | | |
|---|---|---|---|
| | | of online non-downloadable computer software, namely, computer software tools for visual effects for entertainment films and video; providing temporary use of online non-downloadable computer software for cleaning film; providing temporary use of online non-downloadable computer software for cleaning digital film; providing temporary use of online non-downloadable computer software for analyzing, repairing and reconstructing digitised images; providing temporary use of online non-downloadable computer software for analyzing, repairing, reconstructing frames within sequences of digitised images; providing temporary use of online non-downloadable computer software for creating, viewing, editing, processing, manipulating, managing, storing, organizing, importing, and exporting digital images, digital artwork, graphics, text, and data; providing temporary use of online non-downloadable computer software for organizing and viewing photographs; providing temporary use of online non-downloadable computer software for digital drawing, sketching and painting; providing temporary use of online non-downloadable computer software for 3D animation and visual effects; providing temporary use of online non-downloadable computer software for 3D content creation; providing temporary use of online non-downloadable computer software for design, sketching, 3D modelling and photo visualization related to concept and product design for entertainment films and video; providing temporary use of online non-downloadable computer software, incorporating node-based, editorial and finishing tools, for creating visual effects for entertainment films and video; providing temporary use of online non-downloadable computer software for creating audio, video and/or image files in the field of computer operating systems, namely, creating a framework for time variable media; providing temporary use of online non-downloadable computer software adapted for teaching in the field of digital image creation and design, 3D animation | |

| | | | |
|---|---|---|---|
| | | and visual effects for entertainment films and video; providing temporary use of online non-downloadable electronic publications, namely, teaching materials in the field of digital image creation and design, 3D animation and visual effects; providing temporary use of online non-downloadable computer software for use in electronic storage of visual effects and 3D animation data; rental of computer software; computer software technical support services, namely, troubleshooting of computer software problems; information, advisory and consultancy services relating to the aforesaid services | |

Copies of the registration certificates and U.S. Patent and Trademark Office ("USPTO") TSDR printouts for each of the above registrations are incorporated herein and attached hereto as **Exhibits A-C**.

32. There are no other registrations for FOUNDRY or FOUNDRY-formative marks in the visual effects space.

33. Foundry also owns the following U.S. Trademark applications relating to its FOUNDRY marks:

| Mark | Serial No. | Goods and Services | Filing Date |
|---|---|---|---|
| FOUNDRY | No. 99457299 | [International Class 009]: Downloadable computer software and downloadable computer software integration for entertainment, films, games, and video, including using artificial intelligence (AI), for creating, generating, managing, viewing, processing, converting, and rendering computer-generated imagery (CGI), three-dimensional (3D) animation and modeling, extended reality (XR) for visual effects, virtual reality (VR) assets for visual effects, augmented-reality (AR) assets for visual effects (VFX), in-camera on set visual effects (ICVFX), and pipeline provision/tooling, including artist and developer frameworks allowing creation of bespoke effects including via training and refining AI models; Downloadable software for creating and managing editorial timelines and multishot sequences, including reviewing and sharing feedback, for entertainment, films, games, and video | October 22, 2025 |
| FOUNDRY• | No. 99457313 | | October 22, 2025 |
| FOUNDRY• | No. 99457309 | | October 22, 2025 |

| | | | |
|---|---|---|---|
| | | [International Class 042]: Software as a service (SAAS) services and Platform as a Service (PAAS) services for entertainment, films, games, and video, using artificial intelligence (AI), for creating, generating, managing, viewing, processing, converting, and rendering computer-generated imagery (CGI), three-dimensional (3D) animation and modeling, extended reality (XR) for visual effects, virtual reality (VR) assets for visual effects, augmented-reality (AR) assets for visual effects (VFX), in-camera on set visual effects (ICVFX), and pipeline provision/tooling, including artist and developer frameworks allowing creation of bespoke effects including via training and refining AI models; Software as a service (SAAS) services and Platform as a Service (PAAS) services for creating and managing editorial timelines and multishot sequences, including reviewing and sharing feedback, for entertainment, films, games, and video | |

The above marks, registrations, applications and domain name are collectively referred to as (the "FOUNDRY Marks").

34. Prior to filing the above applications, Foundry developed common law rights in the use of its FOUNDRY Marks in connection with the listed goods and services, including with respect to machine learning and generative AI products and services.

35. While Foundry developed common law rights and filed the above applications prior to learning of Adobe's infringing behavior, Adobe's actions (namely, its brazen infringement) have reinforced Foundry's need to secure its existing common law rights with trademark registrations.

36. Foundry has used and continues to use its FOUNDRY Marks in U.S. interstate commerce in all customary channels of trade in connection with the above-identified goods and services.

37. Plaintiff uses the FOUNDRY® Marks prominently in its marketing, including on www.foundry.com and at industry trade shows.

38. Consumers who use Plaintiff's products are presented with the FOUNDRY® Marks.

39. Foundry's incontestable trademark registrations are valid and subsisting, in full force and effect, and constitute conclusive evidence of the validity of the registered trademarks, the registrations therefor and of Foundry's exclusive right to use the trademarks in commerce in connection with the goods and services specified in the registrations.

40. As a result of Foundry's longstanding reputation and significant investments of time, money, and other resources to build and maintain the goodwill of its highly regarded brand, the FOUNDRY Marks symbolize and represent an enormous amount of goodwill and Foundry enjoys a reputation as a provider of high-quality, high-fidelity text, image, video, animation and 3D content creation software and related goods and services under its FOUNDRY Marks.

41. FOUNDRY is an inherently strong trademark when used in connection with text, image, video, animation, and 3D content creation software and related goods and services. Moreover, by virtue of Foundry's substantial sales of products and services under the FOUNDRY Marks and its longstanding use of the FOUNDRY Marks in connection with high-fidelity text, image, video, and 3D digital content creation software and related goods and services, the FOUNDRY Marks are commercially strong as well.

42. In addition, Plaintiff's FOUNDRY® Marks are also conceptually strong, suggestive marks. Plaintiff's FOUNDRY® Marks are suggestive (if not arbitrary) because it requires significant imagination to associate it with Plaintiff's products and services (rich media AI-enabled digital content creation and VFX solutions).

**B. Foundry's High-Fidelity AI-Capable Digital Content Creation Solutions**

43. Foundry has been ahead of the curve in developing advanced, high-fidelity text, image, video, animation, and 3D content creation software with AI capabilities. Recognizing that attitudes to AI are changing, with growing adoption and experimentation in media, entertainment, commercials and advertising, and gaming, Foundry has dedicated significant resources to create solutions that drive

efficiency, empower artists and accelerate repetitive tasks, as well as creating new workflows not previously possible.




*See* https://www.foundry.com/ai-solutions.

44. Foundry's investments in its AI strategy began with its introduction of CopyCat, which operates as a plug-in to its longstanding, industry-standard Nuke compositing software.




*See id.*

45. CopyCat and Foundry's AI Cattery are described and displayed on www.foundry.com along with Foundry's incontestable house mark:




46. Foundry's Nuke CopyCat machine learning toolset has been a commercial success in various industries and has already been deployed for use in major motion pictures. In 2022's *The Matrix: Resurrections*, the VFX supervisor employed Foundry's CopyCat to create key shots, generated missiles, and enhanced practical explosions. *See* https://beforesandafters.com/2022/01/25/how-framestore-used-machine-learning-techniques-in-their-comps-on-the-matrix-resurrections/#:~:text=How%20Framestore%20used%20machine%20learning%20techniques%20in%20their%20comps%20on%20'the%20Matrix%20Resurrections'. Similarly, in *Dune: Part Two*, VFX Supervisor Paul Lambert turned to Foundry for use of its CopyCat product.

47. While many machine learning tools are trained using data from undisclosed sources, Nuke's CopyCat is trained on artists' own material, resulting in more reliable output with no issues around data provenance. When using Nuke's CopyCat, artists enter a small number of frames they have crafted themselves, run the training process, and leave CopyCat to learn from their own source material. This results in a machine learning model with predictable and targeted characteristics that can be deployed across many different shots, saving artists time on laborious tasks. Artists can further refine their CopyCat model with more of their own data, for example to adapt it to the specific look of different sequences or shows.

48. *Dune: Part Two*'s VFX Supervisor Lambert employed Foundry's Nuke CopyCat to depict the piercing blue eyes of the Fremen people of the planet Arrakis. Lambert trained his own model for eye replacements using data from *Dune: Part One* and updates to the CopyCat toolset in Foundry's Nuke compositing software. In a test of CopyCat's scalability, the production team took 280 existing Fremen shots and their corresponding mattes, then cropped and augmented the images to create a dataset of 30,000 eyes—illustrating the impressive scale at which Foundry's AI-capable rich media digital content creation products can be employed. After training the model, the VFX team applied it to shots for *Dune: Part Two*. This application saved artists thousands of hours in manual work.




*See* https://www.foundry.com/insights/machine-learning/untapped-potential-ml-vfx.

49. Foundry's Cattery is a library of open source AI models pre-prepared to work with CopyCat:



50. Foundry's rich media AI-enabled digital content creation solutions have, understandably, achieved industry recognition. Foundry's Nuke product won the Engineering Emmy® Award in 2020. In 2025, its Nuke CopyCat product was nominated for the Emerging Technology Award at the 23rd Annual VES Awards. And Foundry's Nuke Stage won Best of Show at the 2025 NAB Show by TVBEurope.

51. In order to further advance its commitment to providing high quality rich media digital content creation solutions, Foundry recently acquired Griptape, a pioneer in enterprise-grade AI orchestration. This acquisition accelerates Foundry's AI strategy, adding critical orchestration capabilities to complement Foundry's existing AI-enabled rich media digital content creation solutions, which began with the release of CopyCat. The acquisition of Griptape represents the next evolution of this strategy, enabling users to orchestrate multiple AI models and agents within secure, professional workflows that connect seamlessly with Foundry's existing creative toolsets.

52. Ultimately, Foundry's rich media digital content solutions are renowned worldwide and employed by professionals and amateurs alike in the areas of content creation, marketing, interactive storytelling, advertising, and more.

**C. Adobe's Infringing Conduct**

53. On October 20, 2025, Adobe announced, without authorization, its own content creation models that can produce text, images, video, and other 3D content under the name Firefly Foundry.

54. Defendant initially branded the offering "AI Foundry," with Adobe's Vice President of GenAI New Business Ventures, Hannah Elsakr, declaring that "AI Foundry builds on years of Adobe innovation and expertise…to help businesses solve today's most complex content and media production challenges."

55. After receiving Plaintiff's October 22, 2025 cease-and-desist letter, Defendant modified the brand name to "Firefly Foundry," but Defendant and the trade press have consistently shortened that name to "Adobe Foundry" or only "Foundry."

56. Plaintiff promptly informed Defendant that the new phrasing—which still incorporated FOUNDRY in its entirety and is often not presented with "Firefly"—was still likely to cause consumer confusion.

57. Adobe's Firefly Foundry has been, and continues to be, shortened to Foundry by both Adobe and third parties (Adobe's "Foundry" and "Firefly Foundry" are referred to collectively and individually as the "Infringing Marks").

58. Press releases indicate that Adobe launched a custom generative AI service and state: "The ***Foundry***'s custom models, which can ***produce text, images, video, and other mediums like 3D scenes***, are built off Adobe's Firefly family of AI models." *See* https://techcrunch.com/2025/10/20/adobe-launches-a-foundry-service-that-builds-custom-generative-ai-models-for-enterprises/) (emphasis added).

59. Adobe's Firefly Foundry product is a more advanced version of its existing Firefly AI product, which is limited to content creation using general purpose models for use by individual creators and businesses, and is a premium bespoke product in which the AI model is trained only using the particular customer's IP, including brand guidelines, characters, visual styles and content to create on-brand consistent imagery, video and 3D content, for use by enterprise-level Fortune 2000 companies. Firefly Foundry generates multi-concept, multi-modal outputs (image, video, text, audio, vector and 3D), whereas, Firefly generates images, text, video, and vectors.




*See* https://business.adobe.com/products/firefly-business/firefly-foundry.html (emphasis added); *see also* https://www.adobe.com/uk/products/firefly/features/ai-video-generator.html. Adobe describes the Firefly Foundry product as comprising "generative AI models — responsibly trained on your brand or franchise — to solve complex media and content challenge." *see* https://business.adobe.com/products/firefly-business/firefly-foundry.html.

60. This means that Adobe's Firefly Foundry product has the same capabilities and produces the same output as Foundry's FOUNDRY products, including, high-end visual effects and pre and post production capabilities. Both are high-resolution and can be used for commercial, media and TV level content. Both products allow for ideation and story development and both allow generation or manipulation of 3D, video and image for complex production.

61. Indeed, Adobe's description of its Foundry-branded product closely tracks Foundry's description of its own CopyCat solution: "CopyCat in Nuke gives you the tools to train your models with your own data."

62. Adobe and third parties have consistently truncated Firefly Foundry to Foundry.

63. Users of Defendant's product also see a user interface that not only presents "Foundry" as a standalone tool, but as an ***alternative*** to "Firefly" models:




64. Adobe's vice president of GenAI new business ventures, Hannah Elaskr, told news outlets that "the company has built a new consultancy arm for Fortune 2000 companies to develop bespoke AI models that could ***craft hundreds of thousands of images, illustrations, and videos*** that conform strictly to their IP and creative guidelines. Its name: Adobe AI ***Foundry***." *See* https://www.fastcompany.com/91425469/adobe-just-built-an-industrial-grade-ai-weapon-for-the-worlds-biggest-brands (emphasis added). "Adobe AI Foundry" is being marketed as "a deep, consultative partnership that feels more like hiring a boutique division of AI experts from Accenture or IBM than licensing a tool." *Id.* Elaskr also spoke to Venture Beat, who reported that "Adobe AI

***Foundry*** models, with Firefly at its base, will know a company's brand tone, image and video style, products and services and all its IP. The models ***will generate content*** based on this information for any use case the company wants." https://venturebeat.com/ai/adobe-foundry-wants-to-rebuild-firefly-for-your-brand-not-just-tweak-it (emphasis added).

65. Adobe has begun marketing its goods and services under the Firefly Foundry brand to customers, who have taken the use of the Foundry name at face value. Molly Battin, senior vice president and chief marketing officer at The Home Depot, told one news outlet that "***Adobe's AI Foundry*** represents an exciting step forward in embracing cutting-edge technologies to deepen customer engagement and deliver impactful content across our digital channels." *See* https://venturebeat.com/ai/adobe-foundry-wants-to-rebuild-firefly-for-your-brand-not-just-tweak-it (emphasis added).

66. Defendant's Chairman and CEO recently made clear that Defendant is targeting its infringing Foundry offering at a broad set of potential customers: "So the vision clearly is that for ***every single brand***, if you're a ***consumer company or for every single TV show or a movie***, we can create a Foundry specifically for that particular franchise . . . because the ability to help with the automation of that content and production is massive." *See* https://seekingalpha.com/article/4852303-adobe-inc-adbe-q4-2025-earnings-call-transcript.

67. Attached hereto and incorporated herein as **Exhibit D** is a table identifying additional third party publications and uses by Adobe of "Foundry" in the context of rich media digital content creation software solutions and services.

68. Adobe's chosen mark is virtually identical to Foundry's FOUNDRY Marks. Namely, Adobe uses "Foundry" alone or in connection with "Firefly Foundry"—uses which incorporate the FOUNDRY Mark in its entirety.

69. Further, "Firefly Foundry" has been, and continues to be, shortened to "Foundry" by Defendant and third parties.

70. Thus, Defendant's Infringing Mark is identical in sound, sight, and meaning to Plaintiff's FOUNDRY® Marks.

71. Defendant likewise presents its "Foundry" brand in a manner similar to Plaintiff, such as on the Las Vegas Sphere where Defendant's use even mimicked Plaintiff's common stylization of including a period after the word Foundry, in similar *sans serif* font:

| | |
|---|---|
| FOUNDRY. | Powered by Adobe Firefly Foundry. |

72. Because the term "Foundry" is inherently distinctive in relation to content creation software, and because of Foundry's longstanding use of its FOUNDRY Marks and its outstanding reputation in the marketplace, consumers will inevitably assume that Adobe's use of FOUNDRY is somehow associated with Foundry and/or its goods and services or to mistakenly believe that Defendant's Foundry product is approved or licensed by Plaintiff. Confusion is particularly likely in this case because Adobe's use incorporates Foundry's mark in its entirety.

73. That consumer perception would be consistent with the fact that Defendant already ***does*** license FOUNDRY® technology.

74. Thus, even where Adobe pairs the infringing mark with its house mark, adding the "Adobe" house mark to "Foundry" *increases* the likelihood of consumer confusion.

75. This is also the case even where Adobe uses the FOUNDRY mark in connection with its Firefly Foundry generative AI tool. Adobe's Firefly Foundry mark continues to incorporate Foundry's well-known FOUNDRY mark in its entirety, and therefore creates a commercial impression that is confusingly similar to Foundry's well-known FOUNDRY Marks for closely related goods and services.

76. Moreover, the goods and services offered by Adobe under its Foundry brand are identical, virtually identical, and/or highly related to Foundry's goods and services sold under the FOUNDRY Marks insofar as both offer AI-integrated rich media digital content creation software solutions and services.

77. At the 2026 NAB Show, Plaintiff and Defendant won product of the year awards in the same category (Graphics, VFX, Switchers).

78. The parties offer products that are both complementary to each other and products that are in direct competition. Indeed, Foundry and Adobe have a long history of providing competing and complementary products to customers in the content creation space. For example, Adobe offers its AFTER EFFECTS compositing software, which competes directly with Foundry's NUKE compositing software. As a further example, Adobe's SUBSTANCE texturing software competes with Foundry's MARI texturing software. Multiple consumers have compared these competing product offerings. *See, e.g.*, https://www.evercast.us/blog/nuke-vs-after-effects#:%7E:text=After%20Effects%20is%20a%20one,towards%20more%20skilled%20composite%20artists; https://www.cudocompute.com/blog/adobe-after-effects-vs-nuke-whats-the-best-choice-for-vfx-in-the-cloud; https://yelzkizi.org/substance-painter-vs-mari/; https://www.artstation.com/blogs/michaelwilde/ReQ3/mari-vs-substance-which-should-i-learn-for-vfx-texturing. Adobe's Firefly generative AI tool can be used in conjunction with Adobe's After Effects compositing software and Adobe's Substance texturing software.

79. Notably, Defendant has licensed Plaintiff's Keylight greenscreen-removal technology for incorporation in Adobe's After Effects product since 2003, and prominently identifies "Foundry Keylight" as a third-party plug-in within After Effects, so every After Effects user who pulls up the Keylight feature sees the FOUNDRY® trademark inside Defendant's software.

80. Defendant markets Firefly Foundry as covering the same end-to-end media-production workflow that Foundry serves—"from concepting through post-production"—and as "seamlessly available across the Adobe ecosystem," including within Adobe Premiere and After Effects.

81. Defendant's introductory video for Adobe Firefly Foundry explains that its Foundry tool is meant to cover ***every*** aspect of video production, "[f]rom static images to full storyboards, from animatics to final frame," and to "work seamlessly in Adobe apps and workflows." As the video shows, customers will be able to select "Foundry" in existing Adobe products like Premiere Pro or After Effects for use for video editing.

82. Defendant presents "Foundry" as a trademark, capitalized alongside "Firefly" models. A consumer who sees "Foundry" as an option in Adobe applications is thus likely to think that Adobe has partnered with Plaintiff Foundry to offer its tools through Adobe, just like it has partnered with other companies, and with Plaintiff itself in the past.

83. This overlap is only growing. On about April 29, 2026, Defendant just hired a "Staff AI VFX Engineer" to its "Firefly Foundry" team, highlighting its push into Plaintiff's core market. *See* https://www.linkedin.com/posts/addyghani_ive-joined-adobe-on-the-firefly-foundry-share-7455277088833425408-wxrK/?utm_source=share&utm_medi%E2%80%A6. And on May 1, 2026, Defendant posted a job advertisement for another "Staff AI VFX Engineer" for its Foundry product, presenting the brand not only as a standalone product, but as its own company or division, thus compounding the confusion with Plaintiff: "At Foundry, we approach this work with a deep respect for the artistry and craft of VFX." *See* https://careers.adobe.com/us/en/job/R168433/Staff-AI-VFX-Engineer. Defendant's job posting explicitly seeks candidates who have experience with FOUNDRY® (that is, Plaintiff's) Nuke, and announces—for the first time—Defendant's intention to integrate Defendant's Foundry product ***into*** Nuke, under "What You'll Do": Define how Foundry models plug into Nuke . . . ." In short, in the near future, Defendant's plan is to have its Foundry-branded product integrate directly into Plaintiff's FOUNDRY®-branded product. Confusion is practically inevitable.

84. The identity of goods and services offered by Adobe under its Foundry brand with Foundry's goods and services sold under the FOUNDRY Marks is highlighted by the fact that Adobe describes its AI tool as "responsibly trained on your brand or franchise — to solve complex media and content challenges." *See* https://business.adobe.com/products/firefly-business/firefly-foundry.html. This product description is virtually identical to Foundry's description of its rich media digital content creation solutions. *See* foundry.com/ai-solutions ("CopyCat in Nuke gives you the tools to train your models with your own data…").

85. Thus, both Foundry CopyCat and Griptape and Adobe Firefly Foundry can be trained on a particular customer's intellectual property to generate on-brand multi-modal content (image, video, text, audio, vector, and 3D).

86. Adobe is now using the Firefly Foundry brand as a means of entrance into the market of production of text, images, audio, 3D, vectors, results in high quality outputs for use in entertainment, digital media, short videos, long videos, films, advertisements and commercials, and the like. These goods and services are precisely what Foundry has been providing for years, and are thus identical to Foundry's high-quality goods and services.

87. Additionally, the parties' FOUNDRY-branded goods and services are marketed and sold to overlapping classes of purchasers. Foundry and Adobe both market their products to businesses, advertising agencies, in-house advertising departments, recreational filmmakers and content creators, and AI and digital technology enthusiasts. Indeed, Defendant's marketing of Firefly Foundry is targeting Plaintiff's core market. In late January 2026, Defendant announced that it was "collaborating with industry leaders" in media and entertainment to roll out the Foundry product. Adobe has already marketed its Foundry goods and services to Walt Disney Imagineering; Foundry has a historic relationship with Disney and there are therefore actual overlapping customers.

88. Market analysts frequently evaluate Adobe and Foundry within the same competitive landscape. For example, numerous global market research reports on the "Visual Effects (VFX) Software Market" (e.g., DataM Intelligence, Strategic Market Research) analyze the competitive landscape and feature both Adobe and Foundry as key players in the market. *See, e.g.*, https://www.datamintelligence.com/research-report/visual-effects-software-market; https://www.strategicmarketresearch.com/market-report/vfx-software-market.

89. Similarly, specialist trade publications frequently cover both Foundry and Adobe. *See, e.g.*, https://postperspective.com/?s=adobe+foundry; https://www.jonpeddie.com/?s=adobe+foundry; https://www.fxguide.com/?s=adobe+foundry.

90. Professionals in the VFX industry have routinely utilized Adobe's Firefly generative AI tool and Foundry's NUKE compositing software as complementary content creation tools. For example, composition artists have created content using both Adobe's and Foundry's AI-compatible rich media digital content creation tools. *See* https://www.youtube.com/watch?v=8QEGlRX-kH4. This is but one of many examples where Adobe and Foundry share common customers for their complementary tools.

91. Defendant's recent marketing of its products, including its Foundry product, targets the same consumers Plaintiff's core media and entertainment industry, and mimics Plaintiff's marketing claims. For example, Plaintiff has long marketed its products on the strength of their reputation in the film industry, a natural angle given that Plaintiff's products have been used as part of "[e]very VFX Oscar winner in the past decade," and Plaintiff's tools are "[t]rusted by the world's top studios and brands." *See Imagination engineered*, www.foundry.com. Defendant markets its products the same way, claiming that "[f]or decades, Adobe has stood at the heart of filmmaking," that its "technology has earned multiple Academy Awards for scientific and technical achievement," and that "[t]his year, 85 percent of films premiering at the Sundance Film Festival were created using Adobe tools. *See* https://www.blog.adobe.com/en/publish/2026/01/22/adobe-partners-artists-power-new-era-media-entertainment-firefly-foundry.

92. The parties both sell FOUNDRY-branded goods and services through overlapping channels of trade. For example, Foundry and Adobe are members of the same trade organizations, such as ASWF, AOUSD, and the Rookies. Similarly, Foundry and Adobe both present products to consumers –and frequently attend as sponsors in the same tier—at trade shows—and such as the HPA Tech Retreat, NAB Show, FMX, and SIGGRAPH.

93. Adobe's use of "Foundry" also creates a likelihood of reverse confusion insofar as Adobe's junior use of FOUNDRY is likely to create an association between Foundry's FOUNDRY Marks and Adobe, overtaking and swamping Foundry's senior, protected use of the FOUNDRY Marks in connection with its goods and services.

94. Reverse confusion is especially likely here given the size of Adobe and its status as a market leader. Thus, Adobe's use of the Infringing Marks is likely to misdirect users to Adobe's Firefly Foundry product to the detriment of Foundry. Upon information and belief, given Foundry's longstanding, prominent, and senior use of the FOUNDRY Marks, Adobe must have known of Foundry's trademark rights in the FOUNDRY Marks. Also, given Foundry's publicly available, incontestable trademark registrations, Adobe had at least constructive notice of Foundry's rights in the FOUNDRY Marks.

95. On or around October 22, 2025, Foundry expressly communicated in writing its rights in FOUNDRY and notified Adobe of its infringing use via a cease and desist letter. Thereafter, Foundry's counsel sent follow-up written communications and initiated numerous conferences with Adobe's counsel, as recent as February 10, 2026, to attempt to resolve the infringement issue but to no avail. Adobe has refused to cease its infringing use but instead continues to offer infringing goods and services. To date, Adobe continues to promote and foster consumer confusion, and unfairly compete with Foundry by marketing, promoting, advertising and providing its goods and services under the Infringing Marks.

96. Since the filing of this lawsuit, Adobe's conduct has only accelerated and intensified.

97. The 2026 NAB Show, held in Las Vegas from April 18–22, 2026, is the largest trade show for the media, entertainment, and technology industries; more than 58,000 people registered.

98. Plaintiff attended the 2026 NAB Show with approximately fifteen representatives, including its Chief Executive Officer Jody Madden and Chief Technology Officer Steven Shapiro, and Plaintiff received a Product of the Year Award for Nuke 17.0.

99. Adobe also had multiple representatives in attendance, with its Vice President Hannah Elsakr featured as a speaker who, according to her NAB profile, "launched…Firefly Foundry to scale [generative AI]."

100. During the NAB Show, Defendant rented advertising space on the Las Vegas MSG Sphere—visible to NAB attendees and to the broader public throughout the city—displaying the message "Powered by Adobe Firefly Foundry."




101. At an April 19, 2026 panel titled "Building AI Agent Solutions on NVIDIA," held on the show floor before approximately fifty attendees, Ms. Elsakr herself acknowledged the risk of confusion between Defendant's Foundry product and the FOUNDRY® Marks. While describing how Defendant's Foundry product can be used in generative-AI workflows, Ms. Elsakr told the audience that Adobe Foundry was "not to be confused with the gentleman to my left, Foundry, Foundry." *See*

https://www.youtube.com/watch?v=gg91A_yMcA8&t=16s. Notably, Plaintiff's own Jason Schleifer, of Foundry Griptape, was a co-panelist and the "gentleman to [her left]". *See id.*

102. Earlier that same morning, at an invitation-only "Breakfast Briefing" attended by approximately 100–120 Adobe customers, Defendant's field CTO presented its new product as "Firefly Foundry" but thereafter referred to it almost exclusively as "Foundry" standing alone.

103. NVIDIA's CEO Jensen Huang likewise addressed the Adobe Summit during the NAB Show and discussed NVIDIA's partnership with Adobe to "creat[e] customer-specific, brand-specific, AI models on the Firefly Foundry."

104. The 2026 NAB Show is just one example of Defendant's digging in its heels and doubling down on its infringing behavior. Defendant's senior executives have continued to use "Foundry" as a shorthand for the product, including in LinkedIn posts just last month.

105. Industry publications such as Newscast Studio, Jon Peddie Research, Forbes, TechCrunch, Venture Beat, Tech Radar, and Pulse 2.0 have followed Defendant's lead, referring to the product as "Firefly Foundry," "Adobe Foundry," or only "Foundry."

106. And on May 1, 2026, Defendant filed a self-serving trademark application seeking to register FIREFLY FOUNDRY as its own trademark.

107. Adobe's conduct is intentionally malicious, willful and wanton.

108. Defendant plainly knew of Plaintiff and its FOUNDRY® Marks before it launched its own Foundry product. The parties appear at the same trade shows, offer related products, and use one another's technology. Defendant had previously licensed technology from Plaintiff for integration into its own products.

109. Adobe's acts of imitation are committed with knowledge that such imitation is intended to cause confusion or mistake or to deceive.

## FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement – 15 U.S.C. § 1114(1)

110. Plaintiff repeats and realleges the allegations contained in the foregoing Paragraphs as if fully set forth herein.

111. Defendant's use of a copy, variation, simulation or colorable imitation of Plaintiff's registered FOUNDRY Marks in connection with content creation goods and services infringes Plaintiff's rights in its federally registered FOUNDRY Marks and is likely to cause confusion, mistake, or deception, and constitutes trademark infringement, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

112. Defendant uses a copy, variation, simulation or colorable imitation of Plaintiff's FOUNDRY Marks with full knowledge of the long and extensive prior use of the FOUNDRY Marks by Foundry.

113. Defendant's conduct is causing immediate and irreparable injury to Foundry, and to its goodwill and reputation, and will continue both to damage Foundry and to confuse the public unless enjoined by this Court. Unless Defendant is restrained, Foundry will continue to be so damaged because it has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**

**Federal Unfair Competition – 15 U.S.C. § 1125(a)**

114. Plaintiff repeats and realleges the allegations contained in the foregoing Paragraphs as if fully set forth herein.

115. Foundry is the valid owner of the distinctive FOUNDRY Marks, which are entitled to full recognition and protection under federal trademark law.

116. Defendant's unauthorized actions, as described herein, constitute false designation of origin and have caused and/or are likely to cause confusion, mistake, or deception among the consuming public.

117. Defendant's actions have been undertaken with full knowledge of Foundry's longstanding and extensive prior use of the FOUNDRY Marks in connection with content creation software.

118. Defendant's acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

119. Defendant's conduct is causing immediate and irreparable injury to Foundry, and to its goodwill and reputation, and will continue both to damage Foundry and to confuse the public unless

enjoined by this Court. Unless Defendant is restrained, Foundry will continue to be so damaged because it has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### Trademark Infringement – California Common Law

120. Plaintiff repeats and realleges the allegations contained in the foregoing Paragraphs as if fully set forth herein.

121. As described above, Foundry is the valid owner of the distinctive FOUNDRY Marks.

122. Defendant's use of the Infringing Marks is likely to cause confusion or mistake, or to deceive consumers as to the affiliation, connection, or association of Defendant with Foundry, or to cause confusion or mistake, or to deceive consumers as to the origin, sponsorship, or approval of Defendant's goods and services with Foundry's goods and services.

123. The unauthorized, intentional, willful, and bad faith acts and practices of Defendant set forth above will constitute trademark infringement in violation of common law.

124. Defendant's actions have been undertaken with full knowledge of Foundry's longstanding and extensive prior use of the FOUNDRY Marks.

125. As a direct and proximate result of Defendant's infringement, Foundry has been and will continue to be damaged.

126. On information and belief, Defendant has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Foundry as a result of its wrongful conduct.

127. Defendant's conduct is causing immediate and irreparable injury to Foundry, and to its goodwill and reputation, and will continue both to damage Foundry and to confuse the public unless enjoined by this Court. Unless Defendant is restrained, Foundry will continue to be so damaged because it has no adequate remedy at law.

128. Defendant's acts have also been willful and constitute fraud, oppression, and/or malice.

129. Accordingly, Foundry is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a) in addition to all other available remedies.

## FOURTH CLAIM FOR RELIEF

**Unfair Competition – California Bus. & Prof. Code §§ 17200 et seq.**

130. Plaintiff repeats and realleges the allegations contained in the foregoing Paragraphs as if fully set forth herein.

131. Defendant's conduct constitutes unlawful, unfair, or fraudulent business acts or practices and as such constitutes unfair competition under California Business and Professions Code §§ 17200 et seq.

132. Defendant's conduct constitutes unlawful business acts or practices in that Defendant has engaged in unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A), trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1), and trademark infringement and unfair competition under California common law.

133. On information and belief, as a direct and proximate result of Defendant's acts, Foundry has been and will continue to be damaged and has therefore suffered an injury in fact and loss of money or property.

134. On information and belief, Defendant has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Foundry as a result of its wrongful conduct.

135. Defendant's actions have been undertaken with full knowledge of Foundry's longstanding and extensive prior use of the FOUNDRY Marks.

136. Defendant's conduct is causing immediate and irreparable injury to Foundry, and to its goodwill and reputation, and will continue both to damage Foundry and to confuse the public unless enjoined by this Court. Unless Defendant is restrained, Foundry will continue to be so damaged because it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Foundry respectfully requests the following relief:

A. That this Court enter judgment that: (i) Adobe's use of FOUNDRY constitutes trademark infringement in violation of 15 U.S.C. § 1114; (ii) Adobe's use of FOUNDRY constitutes unfair competition and false designation of origin under 15 U.S.C. § 1125; (iii) Adobe's use of FOUNDRY constitutes trademark infringement under California common law; (iv); Adobe's

conduct violates California Business and Professions Code §§ 17200 et seq; and (v) that all of the foregoing wrongful activities by Adobe were willful;

B. That this Court permanently enjoin Adobe, its employees, agents, servants, and all in privity or acting in concert with any of them, from using the FOUNDRY Marks, or any derivative(s) or confusingly similar versions thereof, in commerce on or in connection with Foundry's goods or services;

C. That this Court enter an injunction against further infringement of the FOUNDRY Marks, further false designation of origin concerning the FOUNDRY Marks, and further unfair competition, by Adobe and its employees, agents, servants, and all in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, or advertising the infringing goods and services;

D. That this Court enter an order directing destruction of relevant materials, pursuant to at least 15 U.S.C. § 1118;

E. That this Court require an accounting and disgorgement of profits by Adobe;

F. That this Court award Adobe's profits, Foundry's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post-judgment interest, and reasonable attorneys' fees pursuant to at least 15 U.S.C. §§ 1116, 1117 and/or 1125(a), and California Bus. & Prof. Code §§ 17200 et seq.;

G. That this Court award Foundry such other and further relief that this Court deems just and proper.

## JURY DEMAND

Foundry demands a trial by jury of all claims so triable.

DATED: May 26, 2026

By: */s/ Jennifer M. Lantz*

Jennifer M. Lantz (SBN 202252)
**DUANE MORRIS LLP**
260 Homer Avenue, Suite 202
Palo Alto, CA 94301-2777
Phone: 650-847-4150
Facsimile: 650-847-4151
Email: jmlantz@duanemorris.com

Mark C. Comtois (*pro hac vice*)
mccomtois@duanemorris.com
**DUANE MORRIS LLP**
901 New York Avenue NW
Suite 700 East
Washington, DC 20001
Telephone: (202) 776-5240

Nicole K. McLaughlin (*pro hac vice*)
nkmclaughlin@duanemorris.com
Tyler R. Marandola (*pro hac vice*)
tmarandola@duanemorris.com
Brianna M. Vinci (*pro hac vice*)
bvinci@duanemorris.com
**DUANE MORRIS LLP**
30 S 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1198

*Attorneys for Plaintiff The Foundry Visionmongers Ltd*

**CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document to be electronically filed on May 26, 2026, with the Clerk using the CM/ECF System. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the court's CM/ECF system.

*/s/ Jennifer M. Lantz*

Jennifer M. Lantz