Mark C. Comtois (*pro hac vice*)
mccomtois@duanemorris.com
**DUANE MORRIS LLP**
901 New York Avenue NW
Suite 700 East
Washington, DC 20001
Telephone: (202) 776-5240

Nicole K. McLaughlin (*pro hac vice*)
nkmclaughlin@duanemorris.com
Tyler R. Marandola (*pro hac vice*)
tmarandola@duanemorris.com
Brianna M. Vinci (*pro hac vice*)
bvinci@duanemorris.com
**DUANE MORRIS LLP**
30 S 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1198

Jennifer M. Lantz (SBN 202252)
jmlantz@duanemorris.com
**DUANE MORRIS LLP**
260 Homer Avenue, Suite 202
Palo Alto, CA 94301-2777
Telephone: (650) 847-4150

*Attorneys for Plaintiff The Foundry Visionmongers Ltd.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **THE FOUNDRY VISIONMONGERS LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**ADOBE INC.,**<br><br>Defendant. | Case No. 5:26-cv-2121-NW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>**Reserved Hearing Date: July 22, 2026**<br>**Judge: The Honorable Noël Wise** |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. WELL-PLED ALLEGATIONS IN THE FIRST AMENDED COMPLAINT ..... 2

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 5

A. Defendant's Motion Should Be Denied As A Premature Motion for Summary Judgment. ..... 5

1. Defendant's Request for Incorporation By Reference Should be Denied. ..... 5

2. Defendant's Request for Judicial Notice Should Be Denied. ..... 7

B. Plaintiff Adequately Pleads Likelihood of Confusion, and a *Sleekcraft* Analysis Is Not Necessary or Appropriate At This Stage ..... 11

C. Defendant's Improper Attempts to Contradict The Well-Pled Allegations In The Complaint using the Sleekcraft Factors Lack Merit ..... 13

1. Defendant's Arguments About Customer "Sophistication" ..... 14

2. Defendant's Arguments About The Strength of Plaintiff's FOUNDRY® Marks ..... 15

3. Defendant's Arguments About Relatedness and Proximity of Goods and Services ..... 16

4. Defendant's Arguments About Marketing Channels ..... 18

5. Defendant's Arguments About Actual Confusion, Intent, and Likelihood of Product Expansion ..... 19

D. Plaintiff Adequately Pleads A Theory Of Reverse Confusion ..... 20

E. The Remaining Counts of the Amended Complaint Should Proceed ..... 21

F. Defendant Does Not Present an Argument Regarding Dismissal With Prejudice ..... 21

V. CONCLUSION ..... 22

# TABLE OF AUTHORITIES


Page(s)

**Federal Cases**

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*
125 F. Supp. 3d 945 (N.D. Cal. 2015) .......... 4, 10-13

*Applied Info. Scis. Corp. v. eBAY, Inc.*
511 F.3d 966 (9th Cir. 2007) .......... 4

*Automated Sys. of Tacoma LLC v. Steris Corp.*
2025 WL 3763925 (W.D. Wash. Dec. 30, 2025) .......... 19

*Balestrieri v. SportsEdTV, Inc.*
2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) .......... 7

*Baron App., Inc. v. OpenAI, Inc.*
820 F. Supp. 3d 881 (N.D. Cal. 2026) .......... 17-18

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .......... 4

*Benchmark Cap. Holdings Co., LLC v. Benchmark Co., LLC*
2012 WL 13041640 (N.D. Cal. Jan. 3, 2012) .......... 5

*Boldface Licensing + Branding v. By Lee Tillett*
940 F. Supp. 2d 1178 (C.D. Cal. 2013) .......... 16

*Brixton LLC v. Wooden Bay Co. LLC*
2026 WL 125200 (S.D. Cal. Jan. 16, 2026) .......... 4-5, 7, 13, 19

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*
174 F.3d 1036 (9th Cir. 1999) .......... 14, 16-17, 20

*Carve Design, LLC v. Slingshot LLC*
2026 WL 1506024 (D. Ariz. May 29, 2026) .......... 11

*Caveman Foods, LLC v. Lester*
2013 WL 12172626 (N.D.Cal. Feb. 14, 2013) .......... 8

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*
109 F.3d 275 (6th Cir. 1997) .......... 20

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*
142 F.3d 1127 (9th Cir. 1998) .......... 20

*Empire TM Holdings, LLC v. Lohre*
2022 WL 18674587 (C.D. Cal. May 24, 2022) .......... 12

*Entrepreneur Media, Inc. v. Smith*
279 F.3d 1135 (9th Cir. 2002) .......... 14

*In re Finjan Holdings, Inc.*
58 F.4th 1048 (9th Cir. 2023) .......... 5

*Fortune Dynamic Inc. v. Victoria's Secret Stores Brand Management, Inc.*
618 F.3d 1025 (9th Cir. 2010) .......... 14-16

*Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*
754 F.2d 591 (5th Cir. 1985) .......... 20

*Global Apogee v. Sugarfina, Inc.*
2018 WL 4945305 (C.D. Cal. Oct. 10, 2018) .......... 11-12

*Good Clean Love, Inc. v. Audacious Beauty, LLC*
2024 WL 4529028 (D. Or. Oct. 17, 2024) .......... 11, 19

*Halicki Films, LLC v. Sanderson Sales & Mktg.*
547 F.3d 1213 (9th Cir. 2008) .......... 17

*Institute Nat'l des Appellations D'Origine v. Vintners Int'l Co., Inc.*
958 F.2d 1574 (Fed. Cir. 1992) .......... 9

*Ironhawk Techs., Inc. v. Dropbox, Inc.*
2 F.4th 1150 (9th Cir. 2021) .......... 17

*JaM Cellars, Inc. v. Vintage Wine Estates, Inc.*
2017 WL 2535864 (N.D. Cal. June 12, 2017) .......... 16

*JL Beverage Co., LLC v. Jim Beam Brands Co.*
828 F.3d 1098 (9th Cir. 2016) .......... 16

*Khoja v. Orexigen Therapeutics, Inc.*
899 F.3d 988 (9th Cir. 2018) .......... 6-7

*Kip's Nut-Free Kitchen, LLC v. Kips Dehydrated Foods, LLC*
2019 WL 3766654 (S.D. Cal. Aug. 9, 2019) .......... 6-7, 14, 22

*Mancinelli v. Marriott Int'l, Inc.*
2025 WL 3679686 (N.D. Cal. Dec. 18, 2025) .......... 22

*Marketquest Grp., Inc. v. BIC Corp.*
862 F.3d 927 (9th Cir. 2017) .......... 21

*Matthews v. Apple, Inc.*
769 F. Supp. 3d 999 (N.D. Cal. 2024) .......... 7, 9

*Metro Pub., Ltd. v. San Jose Mercury News*
987 F.2d 637 (9th Cir. 1993) .......... 9

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*
638 F.3d 1137 (9th Cir. 2011) .......... 16

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*
469 U.S. 189 (1985) .......... 15

*Philip Morris USA Inc. v. Cowboy Cigarette Inc.*
2003 WL 22852243 (S.D.N.Y. Dec. 2, 2003) .......... 14

*Pinterest Inc. v. Pintrips Inc.*
15 F. Supp. 3d 992 (N.D. Cal. 2014) ....................8

*Prolacta Bioscience, Inc. v. Prolact Ltd.*
2025 WL 2078270 (C.D. Cal. June 18, 2025) ....................15

*RVCA Platform, LLC v. Nudie Jeans Co AB*
2008 WL 11337820 (C.D. Cal. Aug. 29, 2008) ....................12

*Sam Bernstein Law Firm, PLLC v. Heidari Law Group, PC*
2025 WL 1141167 (C.D. Cal. Feb. 10, 2025) ....................11

*SEB Inv. Mgmt AB v. Wells Fargo & Co.*
742 F. Supp. 3d 1003 (N.D. Cal. 2024) ....................6

*Shake 'N Buns, Inc. v. California Burger Express, Inc.*
2024 WL 2853340 (E.D. Cal. June 5, 2024) ....................11

*Sinatro v. Barilla Am., Inc.*
635 F. Supp. 3d 858 (N.D. Cal. 2022) ....................5

*Surfvivor Media, Inc. v. Survivor Productions*
406 F.3d 625 (9th Cir. 2005) ....................21

*Sushi Nozawa, LLC v. HRB Experience, LLC*
2020 WL 1529379 (C.D. Cal. Mar. 31, 2020) .................... 10-11

*Trader Joe's Company v. Trader Joe's United*
150 F.4th 1040 (9th Cir. 2025) ....................1, 4-5, 17-19, 21

*Trojan Battery Co., L.L.C. v. Golf Carts of Cypress, L.L.C.*
175 F.4th 582 (5th Cir. 2026) ....................16

*Yaros v. Kimberly Clark Corp.*
2018 WL 3729520 (S.D. Cal. Aug. 6, 2018) ....................11

*Zero Motorcycles, Inc. v. Zero Labs Grp., LLC*
2023 WL 3237505 (N.D. Cal. May 3, 2023) ....................8

**Federal Statutes**

15 U.S.C. § 1115(b) ....................15

**Rules**

Fed. R. Civ. P. 8 ....................4, 11

Fed. R. Civ. P. 12 ....................11

Fed. R. Civ. P. 15(a)(2) ....................22

Fed. R. Evid. 201(b) ....................9

L.R. 7-2(b) ....................5

L.R 7-3(a)....................5

## I. INTRODUCTION

As a motion to dismiss, Defendant's filing is frivolous. The sole basis alleged for dismissal of the Amended Complaint is the fact-bound issue of likelihood of confusion, which the Ninth Circuit has often and recently explained "usually requires a full record" and is "often . . . not suitable for resolution even on summary judgment." *Trader Joe's Company v. Trader Joe's United*, 150 F.4th 1040, 1049 (9th Cir. 2025) (reversing grant of motion to dismiss on likelihood of confusion grounds). And to be sure, Defendant's motion reads like one for summary judgment; it largely ignores the well-pled allegations in the Amended Complaint and instead improperly relies on dozens of documents not referenced in the Amended Complaint, along with a declaration attesting to alleged third-party uses of "Foundry." It explicitly asks the Court to reach factual conclusions that contradict allegations in the Amended Complaint, and to draw inferences in favor of Defendant rather than Plaintiff. Indeed, According to Defendant, the Court should conclude that Plaintiff's well-pled allegations are "false," Doc. 42, at 9, "incorrect," *id.*, "misleading[]", *id.* at 12, should be "disregarded," *id.* at 13, and are "undermin[ed]" or "disprove[n]" by evidence outside the Amended Complaint, *id.* at 14, and even that Plaintiff's allegations about Plaintiff's own products are incorrect, *id.* at 15-16. Doing any of that would violate the most basic rule of a 12(b)(6) motion, which requires the Court to take "all well-pleaded factual allegations in the complaint as true" and "constru[e] them in the light most favorable to the nonmoving party." *Trader Joe's*, 150 F.4th at 1048.

Defendant's motion is thus not actually an attack on the detailed allegations in the Amended Complaint; it is a misguided attempt to assert its own disputed—and wrong—narrative of the case over the one presented by Plaintiff. Notably, even Defendant does not appear to believe its own rhetoric that the pleadings fail to plausibly alleged a likelihood of confusion. In the just-filed Case Management Statement, Defendant asserted that this case requires expansive discovery that cannot be completed in the eight months that Plaintiff proposed. That includes, according to Defendant, "critical and complex" expert discovery in light of the "emerging technology and disputes about whether the parties' sophisticated customers are likely to be confused." Doc. 45, at 10-11. And on June 17, Defendant served thirteen interrogatories and forty-one requests for the production of documents on Plaintiff. None of that is consistent with Defendant's claim that this case should be resolved on a motion to dismiss.

The Amended Complaint more than pleads a plausible cause of action for trademark infringement. Defendant launched, in October 2025, a product and service whose name incorporated, in its entirety, Plaintiff's thirty-year-old trademark. And Defendant uses, and plans to use, that infringing trademark both to compete with Plaintiff and to create products that are complementary to Plaintiff's products, that are used in the same workflows, and where creative professionals will routinely see both parties' products and respective trademarks. Not surprisingly, the parties market those products through the same channels, to the same target customers, at the same trade shows, through the same professional organizations, and in the same industries. Plaintiff's Amended Complaint, which details all of that and more, sufficiently pleads a cause of action for trademark infringement and unfair competition under both federal and state law.

Defendant's motion should be summarily denied.

## II. WELL-PLED ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiff is a longstanding staple of the creative software and VFX industries, with a thirty-year history of developing FOUNDRY®-branded creative software and services for use by clients in the media, entertainment, advertising, and gaming industries. First Amended Complaint ("FAC") at ¶ 2. Foundry's products, including its AI-enabled rich media digital content creation products, have experienced great commercial success, and are used by major and independent studios for films, TV, and commercials specializing in visual effects (VFX), 3D modeling, rendering, animation and story development. *Id.* ¶ 3. Plaintiff's FOUNDRY®-branded products have also received significant industry praise, nominations, and awards. *Id.* ¶ 4. Foundry has also been ahead of the curve in developing high-fidelity text, image, video, animation, and 3D content creation software with AI capabilities. *Id.* ¶ 43. This includes developing ethical models which are trained on artists' own material. *See id.* ¶ 47. Foundry also recently acquired Griptape, a pioneer in enterprise-grade AI orchestration, to accelerate its AI strategy. *Id.* ¶ 51.

Foundry takes the goodwill it has built over three decades seriously and has invested significant resources into developing and maintaining that goodwill. FAC ¶¶ 24-25. Foundry has poured resources into the branding and marketing of its products, and has taken steps to secure its intellectual property rights. *Id.* ¶¶ 24-34. Foundry owns longstanding rights in the FOUNDRY® trademark, both in the U.S.

and globally, in connection with text, image, video, animation, and 3D content creation software and related goods and services, including software that leverages AI capabilities to create rich media digital content creation solutions. *Id.* ¶ 29. The core of Foundry is its FOUNDRY® brand. *Id.* ¶ 30. Foundry owns the <FOUNDRY.COM> domain name and incontestable registrations for the FOUNDRY® marks, including U.S. Registration Nos. 5,619,985, 5,619,986, and 5,619,987. *Id.* ¶¶ 31-32, Ex. A-C. As Defendant does not (and cannot) dispute for the purposes of this motion, Plaintiff's trademark rights are valid and enforceable. *Id.* ¶¶ 34-39. The FOUNDRY® marks are inherently strong when used in connection with text, image, video, animation, and 3D content creation software and related goods and services, and FOUNDRY is a conceptually strong, suggestive mark. *Id.* ¶¶ 40-42.

On October 20, 2025, Defendant Adobe announced, without authorization, its own content creation model which can produce text, images, video, and other 3D content. FAC ¶ 53. Defendant originally branded the offering "AI Foundry." *Id.* ¶ 54. After receiving Plaintiff's October 22, 2025 cease-and-desist letter, Defendant claimed to have modified its product's name to "Firefly Foundry," but Defendant and the trade press have consistently shortened that name to "Adobe Foundry" or "Foundry" alone. *Id.* ¶¶ 55, 57. Adobe's product is marketed as a custom generative AI model and service which is trained using the particular customer's IP and Adobe advertises that it generates multi-concept, multi-modal outputs (image, video, text, audio, vector and 3D content). *Id.* ¶¶ 58-59. This marketing is strikingly similar to Foundry's marketing for its content creation solutions, like CopyCat, which "gives you the tools to train your models with your own data." *Id.* ¶¶ 61, 84-85. The similarities in marketing messaging make sense, given that Adobe's Firefly Foundry product has the same capabilities and can produce the same or similar outputs as Foundry's FOUNDRY® branded products, including high-end visual effects and pre- and post-production capabilities; both products are high-resolution and can be used for commercial, media and TV level content; and both products allow for ideation and story development and both allow generation or manipulation of 3D, video and image for complex production. *Id.* ¶ 60. Adobe's actions to date clearly reflect its intent to use the FOUNDRY name to enter the VFX content creation space. *See id.* ¶¶ 66, 80-81, 83, 86, 91. Adobe undertook these actions with knowledge of Foundry's senior usage and substantial goodwill. FAC ¶¶ 108-09. Foundry and Adobe are members of the same trade organizations, such as ASWF, AOUSD, and the Rookies.

FAC ¶ 92. Similarly, Foundry and Adobe both present products to consumers and frequently attend as sponsors in the same tier at trade shows such as the HPA Tech Retreat, the NAB Show, FMX, and SIGGRAPH. FAC ¶¶ 77, 92. The parties offer both complementary products and competitive products to the same classes of customers. *Id.* ¶¶ 78, 88-90. Adobe has licensed Foundry's award-winning technology and has posted job listings seeking candidates who have experience with Foundry's FOUNDRY® Nuke. *See id.* ¶¶ 79, 83.

Despite having clear knowledge of Foundry's FOUNDRY® Marks and of its alleged infringement, Adobe has only accelerated its infringing conduct, ramping up the use of Foundry's mark in Foundry's market, through advertising, public statements, and job postings seeking employees with VFX experience to work with Adobe's FOUNDRY-branded offering. FAC. ¶ 96.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under this standard, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 957 (N.D. Cal. 2015). In evaluating a motion to dismiss, courts take "all well-pleaded factual allegations in the complaint as true" and "constru[e] them in the light most favorable to the nonmoving party." *Trader Joe's Co.*, 150 F.4th at 1048. In the context of trademark infringement, a complaint should present factual allegations sufficient to plausibly show that "(1) it has a valid, protectable trademark, and (2) that [the defendant]'s use of the mark is likely to cause confusion." *Brixton LLC v. Wooden Bay Co. LLC*, No. 25-CV-1155 JLS (SBC), 2026 WL 125200, at *2 (S.D. Cal. Jan. 16, 2026) (quoting *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007)). "Because a careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record, dismissal of trademark disputes at the pleading stage is generally disfavored." *Trader Joe's Co.*, 150 F.4th at 1049 (internal quotation marks omitted). "A defendant thus 'faces a significant challenge to show that the non-existence of such a likelihood can be determined as a matter of law at the pleading stage.'" *Brixton*,

2026 WL 125200, at *3 (quoting *Benchmark Cap. Holdings Co., LLC v. Benchmark Co., LLC*, No. C 11-4883 RS, 2012 WL 13041640, at *4 (N.D. Cal. Jan. 3, 2012)).

## IV. ARGUMENT

### A. Defendant's Motion Should Be Denied As A Premature Motion for Summary Judgment.

Defendant attempts to manufacture—and as the Court to resolve—factual disputes by relying on twenty-seven exhibits spanning hundreds of pages, along with a declaration from an attorney purporting to document research on supposed third party registrations and applications filed with the USPTO. Defendant's attempt to import this huge additional record to contradict the allegations in the Amended Complaint is improper. At the 12(b)(6) stage, the Court may "consider only the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Trader Joe's Co.*, 150 F.4th at 1048. Neither of the two exceptions to the rule—incorporation by reference and judicial notice—support Defendant's effort to import scores of documents for the sole purpose of contradicting the well-pled allegations in the Complaint. On the contrary, the Ninth Circuit has made it clear that judicial notice and incorporation by reference <u>cannot</u> be used to contradict specific allegations in the Complaint: "if specific facts alleged in the complaint contradict specific facts related in a non-legally operative document attached to the complaint, incorporated by reference into the complaint, or subject to judicial notice, the conflict is resolved in the plaintiff's favor." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023). Because Defendant's documents conflict with the allegations, Defendant's Request for Consideration of Documents (Doc. 43) should be denied.[1]

#### 1. Defendant's Request for Incorporation By Reference Should be Denied.

As part of its attempt to factually dispute the Complaint rather than test its legal sufficiency, Defendant asks the Court to consider as incorporated by reference its Exhibits 4-12, which are primarily

[1] Defendant filed a 24-page motion to dismiss and a separate 10-page Request for Consideration, for a total of 34-pages of briefing on its motion to dismiss. Defendant's separate filings have no purpose other than to evade the Local Rule requirement that a motion be "one filed document not exceeding 25 pages in length." L.R. 7-2(b). *See Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 868 n.2 (N.D. Cal. 2022) (admonishing parties to include requests for judicial notice "within the main briefs and within the allotted page limits"). Because Local Rule 7-3(a) requires the Defendant to include "[a]ny evidentiary and procedural objections to the motion . . . within the brief," Plaintiff includes those objections here and will not file a separate substantive opposition to the Request for Consideration.

articles, websites, or statements cited by Plaintiff in the FAC as examples of Defendant's use of the infringing "Foundry" brand. Defendant, in contrast, pulls self-serving, often hearsay, statements from different parts of those websites or articles to contradict Plaintiff's allegations and support Defendant's preferred narrative, and asks the Court both to assume the truth of those statements and to draw inferences in Defendant's favor from them. That is improper. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint. This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage."). Incorporation by reference is to ensure that the complaint does not take statements entirely out of context; it is not a vehicle for pulling into the "complaint" unrelated and contradictory information. *See Kip's Nut-Free Kitchen, LLC v. Kips Dehydrated Foods, LLC*, 2019 WL 3766654, at *2-3 (S.D. Cal. Aug. 9, 2019) (rejecting incorporation by reference for "unrelated information found elsewhere" on websites referenced in the complaint).

Defendant also ignores entirely the controlling law on incorporation by reference. The FAC, as noted above, typically refers to certain websites only once as examples of how Defendant has presented its infringing Foundry trademark to the public. Defendant ignores that incorporation by reference—at least of a non-legally operative document—requires the complaint refer "extensively" to the document. *Khoja*, 899 F.3d at 1002. Extensively means "ordinarily, at least more than once." *SEB Inv. Mgmt AB v. Wells Fargo & Co.*, 742 F. Supp. 3d 1003, 1015-16 (N.D. Cal. 2024). "Simply mentioning a document is insufficient to incorporate the document by reference into the complaint." *Id.* The documents referenced in Defendant's Request for Consideration, Exhibits 4-12, are simply mentioned in the FAC, typically just to show how Defendant uses the infringing mark and thus do not meet the standard for incorporation by reference.

Defendant also asks for incorporation by reference of Exhibits 4.2 and 4.3, which are portions of Plaintiff's website and its terms of use that Defendant concedes are not referenced, attached to, or quoted in the Complaint. Not surprisingly, Defendant does not cite any case that has held incorporation by reference is appropriate under these circumstances. The law is to the contrary. *Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *3 (N.D. Cal. Sept. 16, 2025) (refusing to incorporate by

reference website terms of use not mentioned in the complaint); *Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1007 (N.D. Cal. 2024) (refusing to incorporate website terms of use where the "complaint does not mention the Media Terms or iCloud Terms").

Defendant's request for incorporation by reference should be denied.

**2. Defendant's Request for Judicial Notice Should Be Denied.**

A court may take judicial notice of "matters of public record," but it "cannot take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999. Nor may courts take judicial notice of facts which are subject to dispute. *Brixton*, 2026 WL 125200, at *2. But that is exactly what Defendant's request for judicial notice demands that the Court do. The FAC alleges that Plaintiff's FOUNDRY® Marks are conceptually and commercially strong. FAC ¶¶ 41-42. Defendant states that it is seeking to use the request for judicial notice of USPTO records, websites, and dictionary definitions "to establish that the meaning of 'foundry' is descriptive or suggestive" and thus—so Defendant claims—to establish that Plaintiff's mark is conceptually weak, contradicting the allegations in the Amended Complaint. Indeed, Defendant explicitly asks the Court to rely on these documents to conclude that Plaintiff's well-pled allegations are "false," Doc. 42, at 9, and "incorrect," *id.* That is improper. Judicial notice cannot be used to contradict the allegations in the Complaint. *See Kip's Nuts, LLC*, 2019 WL 3766654, at *2-3. Because the only purpose of Defendant's request for judicial notice is to introduce what it considers to be facts and thus resolve the "hotly contested question[s]" of the strength of Foundry's FOUNDRY® Marks and the likelihood of confusion between the FOUNDRY® Marks and Defendant's infringing Foundry mark, Defendant's request must be denied. *See Brixton*, 2026 WL 125200, at *2 (denying request for judicial notice because "the strength of the Brixton Marks is in dispute, and a court may only take judicial notice of facts that are 'not subject to reasonable dispute'"); *Zero Motorcycles, Inc. v. Zero Labs Grp., LLC*, 2023 WL 3237505, at *3 (N.D. Cal. May 3, 2023) ("In the context of the present motion to dismiss, judicial notice of the USPTO documents is not appropriate because the fact for which Defendant offers them—to prove that Plaintiff's trademarks are weak—is disputed."); *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 997 (N.D. Cal. 2014) ("[W]hile the USPTO records may be subject to judicial notice, they are noticeable only for the limited purpose of demonstrating that the filings and actions described therein occurred on certain dates. To the extent

defendant claims the USPTO records bear on whether the 'pin' mark is generic, this hotly contested question cannot be answered solely by reference to information gleaned from judicially noticeable documents."); *Caveman Foods, LLC v. Lester,* 2013 WL 12172626, *2 (N.D.Cal. Feb. 14, 2013) ("The strength of the [challenged] mark is the central disputed question of this litigation and an inappropriate subject for judicial notice."). Defendant's "Request for Consideration should be denied for this reason alone.

**a. Online Dictionaries**

While it can be appropriate to judicially notice dictionary definitions, Defendant does not actually rely on the dictionary definitions it asks the Court to notice. *See* Doc. 42, at 8. That is because Defendant wants the Court to reach the factual conclusion that "foundry" is descriptive of some or all of the parties' services, and the actual dictionary definitions do not support that narrative. All of Defendant's dictionary definitions confirm that the word foundry means "an establishment for producing castings in molten metal," which bears little or no connection to any of the products and services at issue in this case. Doc. 42-17, at 2; *see also* Doc. 42-18, at 3 ("a building or factory where metals are cast"); Doc. 42-19, at 2 ("a factory where metal is melted and poured into specially shaped containers to produce objects such as wheels and bars"). Instead of the actual dictionary definitions, Defendant claims that the "dictionaries . . . recognize Intel's business model of manufacturing computer chips for others as a 'foundry' model." Doc. 41, at 8. That is false, because what Defendant cites is not part of the dictionary, and comes with the disclaimer that "[e]xamples are automatically compiled from online sources to show current usage. Opinions expressed in the examples do not represent those of Merriam-Webster or its editors." Doc. 42-18, at 2. Whatever the propriety of taking judicial notice of a definition in a dictionary, no principle of judicial notice allows for random "automatically compiled" sentences to be offered for their truth to trump well-pled allegations in a complaint. *See Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1007 (N.D. Cal. 2024) ("However, courts 'cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed.").

**b. USPTO Search Results**

Defendant's request for judicial notice of USPTO searches demonstrates how far afield from a proper request for judicial notice Defendant has strayed. First, judicial notice is inappropriate here

because Defendant seeks notice for the purpose of having the Court weigh the evidence on ***disputed*** facts. *See* Fed. R. Evid. 201(b) (judicial notice only appropriate for a "fact that is not subject to reasonable dispute"). Second, Defendant's cited cases do not support Defendant's use of these materials, but instead stand for the proposition that third party registrations may be used to show ***either*** that a term is used descriptively in an industry ***or*** that it is not. *See* McCarthy on Trademarks & Unfair Competition § 11:69 ("However, third party mark registrations may in some cases support the argument that a designation is ***not*** descriptive. The fact that the U.S.P.T.O. registered a number of marks containing the same designation without requiring proof of secondary meaning is some evidence that the PTO considers the designation not descriptive."); *Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 641 n.3 (9th Cir. 1993) (third party registrations at preliminary injunction stage tended to show that "Patent and Trademark Office has deemed [similar marks] worth of trademark status.").

Registrations can bear on the relative weakness of a mark in the industry where the USPTO requires the applicant to disclaim a term because it is "the common name of goods" or where the terms is used in the ***description of goods*** section of the application, as Defendant's own cases say. *Institute Nat'l des Appellations D'Origine v. Vintners Int'l Co., Inc.*, 958 F.2d 1574, 1581-82 (Fed. Cir. 1992). Yet Defendant's request for judicial notice does not ask the Court to use the third-party records in any of these ways. Instead, Defendant asks the Court to conclude that there is a "crowded field" of "hundreds of marks ***using*** 'foundry' in the sense of a studio or lab." Doc. 42, at 9 (emphasis added). Case law indicates that Defendants' proposed use is improper, because a "crowded field" defense is very fact intensive, and requires the evaluation about whether or to what extent any of the referenced marks are in use anywhere. *See infra* pp. 17 (citing cases that third-party registrations are not evidence of use). Defendant's voluminous exhibits do not include any of that information, and the utility of the numerous entries is further lowered because . the goods and services cover a broad spectrum of unrelated offerings, including things like "metal bells," "cosmetic preparations for skincare," "candles," "barbecue sauce," "rental of real estate," and dozens or hundreds of other goods and services that have no relation to this case. Defendant reckons with none of this; it just attaches a barely-readable list and asks the Court to sift through it and reach factual conclusions at odds with the Amended Complaint.

In fact, were the search results to be used in line with the case law and treatise comments, they support that "foundry" is ***not*** a common description for goods and services like those at issue here. First, the registrations and applications referenced in Defendant's searches are on the Principal Register and do not reference any disclaimers of "foundry," which would illustrate that the term is not descriptive. Second, the description of goods and services section of Defendant's charts illustrate that almost none of the applications and registrations listed use "foundry" to ***describe*** the goods and services unless they are offering actual metal casting. *See, e.g.*, Doc. 42-29, at 13 (ALU-BRA logo for "aluminum and brass casting foundry services; metal casting services"), 15 ("periodical magazine in the field of the foundry, metal working, and diecasting industries"), 17 ("foundry services, namely, forging and manufacture of metal goods to the order and specification of others"), 28 ("foundry services, namely, preparing foundry castings, and custom structural steel fabrications for construction uses").

For these reasons, Defendant's Request for Judicial Notice should be denied because the documents and affidavits on which Defendant relies are not properly considered at the 12(b)(6) stage. *Adobe Sys. Inc.*, 125 F. Supp. 3d at 966-67; *Sushi Nozawa, LLC v. HRB Experience, LLC*, 2020 WL 1529379, at *2 (C.D. Cal. Mar. 31, 2020) (declining to take judicial notice of contents of websites because they "contain disputed matter" and allowing judicial notice of USPTO records only for "the limited purpose of demonstrating that the filings and actions described therein occurred on certain dates" but not for noticing "disputed facts"). The *Adobe* case is instructive both because the court denied a motion to dismiss Adobe allegations far more conclusory than the ones Adobe challenges here and because the court rejected the defendant's attempt to inject documents—there an affidavit attesting to sales of genuine Adobe products—from outside the complaint for the purpose of contradicting those allegations. *See Adobe Sys. Inc.*, 125 F. Supp. 3d at 966-68. *Adobe* also rejected the notion that an early motion to dismiss should be converted into a motion for summary judgment under Federal Rule of Civil Procedure 12(d) because that motion would be "premature" before any discovery had occurred. *Id.* at 968. The same reasoning applies here, and the Court should deny Defendant's motion as an improper and premature motion for summary judgment.

**B. Plaintiff Adequately Pleads Likelihood of Confusion, and a *Sleekcraft* Analysis Is Not Necessary or Appropriate At This Stage**

Plaintiff's detailed Amended Complaint more than meets the requirement for a "short and plain statement" of Plaintiff's claim. Fed. R. Civ. P. 8(a)(2). Indeed, at the motion to dismiss stage, a full *Sleekcraft* analysis is both unnecessary and inappropriate; courts routinely deny motions to dismiss without undertaking them. *See Carve Design, LLC v. Slingshot LLC*, 2026 WL 1506024, at *8 (D. Ariz. May 29, 2026) (denying motion to dismiss without *Sleekcraft* analysis because "the inquiry is into the sufficiency of the pleading, not of the evidence"); *Sam Bernstein Law Firm, PLLC v. Heidari Law Group, PC*, 2025 WL 1141167, at *8 (C.D. Cal. Feb. 10, 2025) ("Defendant's attempt to apply the fact-intensive *Sleekcraft* factors test is premature at this motion to dismiss stage."); *Good Clean Love, Inc. v. Audacious Beauty, LLC*, 2024 WL 4529028, at *6 (D. Or. Oct. 17, 2024) (declining a *Sleekcraft* analysis where "this Court does not find the contested marks so unrelated and confusion so unlikely to justify granting the Defendant's motion as a matter of law at this early stage"); *Shake 'N Buns, Inc. v. California Burger Express, Inc.*, 2024 WL 2853340, at *4 (E.D. Cal. June 5, 2024) ("Defendant cites no authority supporting an argument that under the circumstances presented here – where the parties' marks share the same words and have at least some similar design features, and where the marks are used on similar goods at competing restaurants within a ten-minute drive of each other – a court may dismiss an infringement claim on the pleadings."); *Sushi Nozawa, LLC, LLC*, 2020 WL 1529379, at *3; *Global Apogee v. Sugarfina, Inc.*, 2018 WL 4945305, at *3 (C.D. Cal. Oct. 10, 2018) ("premature" to conduct a full likelihood of confusion analysis on motion to dismiss where plaintiff alleges that defendant used the same word in connection with the same type of services); *Yaros v. Kimberly Clark Corp.*, 2018 WL 3729520, at *6 (S.D. Cal. Aug. 6, 2018) ("Throughout its argument, Defendant makes merits based conclusions without the benefit of full discovery and at this stage, it is improper for the Court to weigh the factual allegations to determine whether the *Sleekcraft* factors have been met."); *Adobe Sys. Inc.*, 125 F. Supp. 3d at 966-67(allegations that defendant's use of infringing mark was "likely to cause confusion or mistake" and to "'defraud customers' who 'believe that the items offered for sale by Defendants are authorized products manufactured and distributed by Plaintiff'" sufficient to withstand motion to dismiss); *RVCA Platform, LLC v. Nudie Jeans Co AB*, 2008 WL 11337820, at *4 (C.D. Cal.

Aug. 29, 2008) ("It is neither necessary nor appropriate to determine, at this stage in the litigation, whether RCVA will ultimately be able to prove that the likelihood of confusion element is satisfied.").

Consistent with this principle, the small number of cases in this circuit that have decided likelihood of confusion on a motion to dismiss all involved situations where the marks were "obviously dissimilar" or the "court determines as a matter of law ***from the pleadings*** that the goods are unrelated and confusion is unlikely." *Global Apogee*, 2018 WL 4945305, at *2-3. That is a "highly unusual" situation, *id.* at *2, and is precluded by the allegations in the Amended Complaint. The Court can and should deny Defendant's motion to dismiss summarily and without a *Sleekcraft* analysis at this stage. *See Empire TM Holdings, LLC v. Lohre*, 2022 WL 18674587, at *10 (C.D. Cal. May 24, 2022) (denying motion to dismiss without *Sleekcraft* analysis where "[b]oth parties offer fitness-related services, and the two marks are somewhat similar").

The Amended Complaint alleges specific, concrete facts that, taken as true, make a likelihood of confusion not merely plausible but compelling. Plaintiff alleges that it owns the FOUNDRY mark, that it has been using the FOUNDRY® Mark for thirty years, and that Adobe's infringing mark incorporates the FOUNDRY mark "in its entirety" and is "identical in sound, sight, and meaning" to Foundry's incontestable registrations. FAC ¶¶ 68–70. Plaintiff alleges that Adobe and third parties have "consistently truncated" the name of Adobe's infringing goods and services to simply "Foundry." FAC ¶¶ 57, 62, 69, 104–05. As to relatedness of goods and services, Plaintiff alleges in detail the related and in some cases identical nature of the parties' goods and services. Both parties offer AI-integrated rich media digital content creation software producing the same outputs—images, video, 3D content—for the same end-to-end media-production workflows and functions. FAC ¶¶ 60, 76, 80, 84–86. The parties share overlapping customers, including Disney, and sell through the same trade channels, trade organizations, and trade shows. FAC ¶¶ 87, 92. Indeed, the parties' offerings are so closely related that their employees have appeared on the same panels to discuss them, such that Adobe's own executive had to clarify that its product was "not to be confused with the gentleman to my left, Foundry, Foundry." FAC ¶ 101. The Amended Complaint alleges that consumers already use the parties' products side-by-side in the same workflows, and that Defendant plans to incorporate Defendant's infringing Foundry offering "seamlessly in Adobe apps and workflows." FAC ¶¶ 81, 90.

Plaintiff further alleges in detail Defendant's recent focus on using its infringing Foundry brand to compete directly in Plaintiff's core market of visual effects. FAC ¶¶ 90-92. Defendant has begun hiring aggressively in that industry, and its job postings emphasize the relatedness of the parties' products by requiring employees be experienced with Plaintiff's FOUNDRY® Nuke product so that they can work on integrating Adobe's Foundry products with Plaintiff's Foundry products. FAC ¶ 83.[2] As to Defendant's intent, Plaintiff alleges that Defendant knew of Plaintiff's FOUNDRY® Marks before launching its own Foundry product, FAC ¶ 108, and copied Plaintiff's marketing claims for its related products almost word-for-word, FAC ¶ 84. And the Amended Complaint explains that Defendant already licenses FOUNDRY®-branded technology, such that consumers are used to associating "Foundry" within ***Adobe*** products with Plaintiff, thus making confusion highly likely. FAC ¶¶ 79, 108. And although not required, Plaintiff specifically alleges a reverse confusion theory in addition to forward confusion. FAC ¶¶ 93-94.

These factual allegations go well beyond conclusory assertions, and Defendant's motion either ignores them or improperly attempts to contradict them. Defendant's motion should be denied. *See Brixton LLC*, 2026 WL 125200, at *4 ("Rather than point to any meaningful deficiencies in Plaintiff's Complaint, Defendant attempts to argue that, as a matter of law, there is no likelihood of confusion between Brixton Marks and the Bronxton Marks, without a complete factual record before the Court.").

### C. Defendant's Improper Attempts to Contradict The Well-Pled Allegations In The Complaint using the Sleekcraft Factors Lack Merit

Ninth Circuit law requires that likelihood of confusion be "determined by an eight-part test that is 'predominantly factual in nature.'" *Kip's Nuts*, 2019 WL 3766654, at *4 (quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002)). As explained above, a *Sleekcraft* analysis is unnecessary and inappropriate at the motion to dismiss stage, and thus the Court can and should disregard Defendant's lengthy factor-by-factor attempts to have the Court resolve factual disputes,

[2] Demonstrating the danger of overusing the incorporation by reference doctrine, Defendant claims that the Exhibit 8 attached to its Motion to Dismiss is a "true and correct copy of a job posting" that "Plaintiff relies on" in paragraph 83. Doc. 42-1, ¶ 13. That is false. In fact, Defendant's Exhibit 8 is a revised version of the job posting that Adobe put up only ***after*** Plaintiff attached the original posting to its Motion for Preliminary Injunction. The Complaint quotes from the original.

including entirely manufactured disputes. But it is worth highlighting just how far Defendant's primary arguments depart from both the allegations in the Amended Complaint and settled trademark law.

**1. Defendant's Arguments About Customer "Sophistication"**

Defendant's brief puts the vast majority of its argument into asking the Court to improperly conclude as a factual matter that the parties' customers are "sophisticated." Defendant's brief uses that term ***23 times***, even though the Amended Complaint does not say it ***even once***. The thrust of Defendant's factual position is the same each time: "The degree of sophistication of the buyers of Firefly Foundry and Foundry Visionmongers' products essentially rules out any possibility of confusion." Doc. 42, at 19. This assertion lacks any factual basis. Defendant has no evidence (particularly at the pleading stage) that its target consumer base for the infringing Foundry product is narrow or sophisticated, much less that it will remain so. In fact, the Amended Complaint alleges that Defendant is marketing its infringing Foundry product to "every single brand," not just sophisticated ones, and that Defendant views the market as "massive." FAC ¶ 66. And where, as here, Defendant is alleged to market to a wide swath of purchasers with varying degrees of expertise, "the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer." *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999).

Setting aside the impropriety of making a factual determination like this against Plaintiff at the pleading state, even if the parties' customers were sophisticated, Defendant ignores the law by pretending that sophistication can only weigh against confusion, and never in favor. To the contrary, depending on the factual context, "a discerning consumer might immediately connect the like-named products more readily than an unsophisticated consumer." *See Fortune Dynamic Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025, 1038 (9th Cir. 2010); *Philip Morris USA Inc. v. Cowboy Cigarette Inc.*, 2003 WL 22852243, at *4 (S.D.N.Y. Dec. 2, 2003) (granting summary judgment for plaintiff where "sophisticated purchasers are, if anything, more likely to be aware of Marlboro's trade dress and hence to perceive seeming connections between Marlboro and Cowboy cigarettes"). The Amended Complaint pleads that consumers familiar with the industry are accustomed to the complementary nature of Plaintiff's and Defendant's goods and services—and the relevant consumers here are likely to know that Defendant already licenses certain FOUNDRY®-branded tools. FAC ¶¶ 79,

90, 108. Sophisticated purchasers are highly likely to understand that companies in the video production space commonly work together, license one another's tools, or otherwise build products that allow integration with third-party applications, as has happened with these two parties in the past. These facts, as pled in the Amended Complaint, support a finding that this factor weighs in favor of Plaintiff, regardless of the resolution of the factual questions about the level of consumer sophistication.

### 2. Defendant's Arguments About The Strength of Plaintiff's FOUNDRY® Marks

As to the strength of Plaintiff's trademarks, Defendant asks the Court to conclude at the pleading stage, without any discovery, that Plaintiff's FOUNDRY® Mark is "a common descriptive mark." Doc. 42, at 7. This attempt contradicts both the law and the Amended Complaint. Plaintiff alleges that it owns the FOUNDRY® Marks, including ***incontestable*** Trademark Registration Nos. 5,619,985, 5,619,986, and 5,619,987. FAC ¶¶ 29-42. It is basic trademark law that "the holder of a registered trademark may rely on incontestability to enjoin infringement and . . . such action may not be defended on the grounds that the mark is merely descriptive." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985). These registrations are thus conclusive evidence of the validity of the marks, Plaintiff's ownership of them, and Plaintiff's exclusive right to use them in commerce. 15 U.S.C. § 1115(b); *Prolacta Bioscience, Inc. v. Prolact Ltd.*, 2025 WL 2078270, at *15 (C.D. Cal. June 18, 2025) ("Registered marks that have been declared incontestable are afforded a conclusive presumption of validity."). Because the marks are conclusively valid, they cannot be descriptive. In any event, where a mark ranks in conceptual strength is "a question of fact," *Fortune Dynamic, Inc*, 618 F.3d at 1034, and the Amended Complaint correctly alleges that FOUNDRY® is a "conceptually strong, suggestive mark," FAC ¶ 42.

Defendant goes on to argue that suggestive marks are "presumptively weak," purportedly quoting *Network Automation*. Not only does this contradict the allegation above, that quote is not from *Network Automation*; rather, *Network Automation* recognized the general rule that commercial strength—often demonstrated through advertising expenditures—"can transform a suggestive mark into a strong mark." *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011); *see also Brookfield Communications*, 174 F.3d at 1058 (holding that a suggestive mark may

be strong where "that mark has achieved actual marketplace recognition"). Plaintiff's Amended Complaint pleads ample facts supporting commercial strength, thus supporting the overall strength of Plaintiff's longstanding FOUNDRY® Marks. Indeed, the Amended Complaint pleads that Foundry is a household name in the VFX industry as evidenced by its award-winning products, recognition in earned media, and broad use across industries. FAC ¶¶ 2-5, 14-17, 23-26, 39-42; *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016); *Fortune Dynamic, Inc.*, 618 F.3d at 1034-35(denying summary judgment and holding that commercial strength was a jury question).

Defendant's motion and the attached extrinsic "evidence" do nothing but attempt to contradict these allegations, and accordingly must be disregarded. As noted above, the blunderbuss printouts from the USPTO website are not the proper subject of judicial notice on a motion to dismiss. But even if they were, simply printing out a list of trademark registrations or applications has no significance for whether there is actually a "crowded field" and is instead a "generous pour of misdirection." *JaM Cellars, Inc. v. Vintage Wine Estates, Inc.*, 2017 WL 2535864, at *5 (N.D. Cal. June 12, 2017). That is because "[t]hat a mark is registered does not establish how widely used it is" and thus is not any evidence of trademark weakness. *Id.*; *see also Trojan Battery Co., L.L.C. v. Golf Carts of Cypress, L.L.C.*, 175 F.4th 582, 594 (5th Cir. 2026) ("[W]e will not assume any knowledge on the part of the purchasing public by mere registrations in the Patent Office, nor will we assume that the marks are in continuing use, so as to have any effect on the mind of the purchasing public merely because they had been so registered."); *Boldface Licensing + Branding v. By Lee Tillett*, 940 F. Supp. 2d 1178, 1191 (C.D. Cal. 2013) ("Upon further research and briefing from the parties in this case, the Court is now convinced that these third-party registrations are not probative of conceptual weakness without evidence that the marks were actually used in commerce and viewed by consumers.").

### 3. Defendant's Arguments About Relatedness and Proximity of Goods and Services

As alleged in the Amended Complaint, the goods and services offered by the parties range from identical to closely related. Defendant spends much of its briefing attempting to push its alternative factual narrative that somehow "bespoke generative AI models" are unique and unrelated as a matter of law to any other category of goods. Not surprisingly, Defendant's "not an AI model" test finds no support

in the case law. And more importantly, the Ninth Circuit has "held that the 'basic premise—that a trademark provides protection only when the defendant uses the mark on directly competing goods—is no longer good law.'" *Trader Joe's Co.*, 150 F.4th at 1050 (quoting *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1228 (9th Cir. 2008)).

The question of relatedness is a highly factual one, and the "focus is on whether the consuming public is likely somehow to associate [defendant's] products with [plaintiff's]." *Brookfield Communications*, 174 F.3d at 1056; *see id.* ("Here, both companies offer products and services relating to the entertainment industry generally, and their principal lines of business both relate to movies specifically . . . ."). Thus, a plaintiff's rights extend to all products and services "which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1163 (9th Cir. 2021). Here, the parties do, indeed, offer directly competing goods, along with complementary products that are related under the law. *See* FAC ¶¶ 78, 88-90.

Defendant attempts to contradict the allegations and draw a false distinction between its Firefly Foundry product—a content creation model for use in video production—and Foundry's content creation software and services for use in video production. *See* Doc. 42 at 15-17. "This argument 'overemphasizes [the] differences in [the parties'] principal lines of business,' rather than focusing on whether consumers are likely to associate the products or services." *Baron App., Inc. v. OpenAI, Inc.*, 820 F. Supp. 3d 881, 897 (N.D. Cal. 2026). Indeed, Defendant's arguments mirror those of the defendant in the *Baron App.* case. There, defendant OpenAI "attempt[ed] to distinguish" its AI "cameo" feature from plaintiff's Cameo videos featuring recordings of human beings, by arguing that "they are not similar because Sora generates AI videos and Plaintiff's platform offers 'customized recorded videos.'" *See id.* The court disagreed, finding that "the products are used for similar purposes," in the same industry. *See id.* The same analysis applies here. The Amended Complaint alleges that Defendant's product using the infringing Foundry brand is marketed "as covering the same end-to-end media-production workflow that Foundry serves." FAC ¶ 80; *see also id.* at ¶¶ 59, 60 ("Adobe's Firefly Foundry product has the same capabilities and produces the same output as Foundry's FOUNDRY products . . ."), 61. These allegations are more than sufficient to plead relatedness of the relevant goods and services.

At the very least, Plaintiff's and Defendant's offerings "are sufficiently complementary in nature . . . that consumers may nevertheless be confused about the source or sponsorship of these products if they are labeled with a mark similar to" Plaintiff's FOUNDRY® mark. *See Trader Joe's Co.*, 150 F.4th at 1050. This is especially true in light of the Amended Complaint's factual allegations relating to Defendant's plans to use Firefly Foundry to encroach on the VFX space. *See* FAC ¶¶ 83-86.

**4. Defendant's Arguments About Marketing Channels**

Defendant does not seriously dispute that the Amended Complaint alleges overlapping marketing channels that make confusion likely. The parties are members of the same trade organizations, present at the same trade shows, and attend as sponsors at those same events. FAC ¶¶ 92, 97-99. For example, as outlined in the Amended Complaint, employees of Plaintiff and Defendant appeared on the same panel at the National Association of Broadcasters trade show in April 2026, emphasizing the relatedness of their products and customer bases. FAC ¶ 101. The parties' products are likewise marketed to overlapping classes of purchasers, and are frequently used as complementary content creation tools. FAC ¶¶ 87-91. Both parties target customers in the VFX industry, allegations that Defendant entirely ignores. FAC ¶¶ 83-86. The parties have even won Product of the Year awards in the same category. FAC ¶ 77. These factual allegations are more than sufficient at this stage.

Instead, Defendant makes up an entirely new narrative to try to contradict the allegations, arguing that "the parties reach customers through direct, individually negotiated enterprise relationships, leaving no shared channel in which a buyer could mistake one from the other." Doc. 42, at 20. Defendant does not pretend that this allegation is in the Amended Complaint, because it is pure fabrication. To the contrary, ***every*** piece of Defendant's marketing alleged in the Amended Complaint is public and directed broadly: websites, blogs, trade shows, third-party news articles, billboard style advertising on the Las Vegas Sphere, and on and on. That is the ***opposite*** of "individually negotiated enterprise relationships." And Defendant's assertion likewise contradicts Plaintiff's explicit allegation that "Defendant is targeting its infringing Foundry offering at a broad set of potential customers." FAC ¶ 66. Even if it were true that ***some*** customers learn about Defendant's infringing Foundry offering through "individually negotiated enterprise relationships," that is hardly a reason for ignoring the allegations in the complaint to

impermissibly draw an inference in Defendant's favor that ***every*** customer learns of the infringing Foundry offering that way.

Defendant likewise invents a world, again contradicting the Amended Complaint, where "Firefly Foundry is not available to ordinary consumers." Doc. 42, at 21. Putting aside the fanciful, lawyer-driven narrative that Defendant would tell potential customers they are too "ordinary" to buy its goods and services, the Amended Complaint clearly alleges that Defendant's CEO thinks differently: "So the vision clearly is that for every single brand, if you're a consumer company or for every single TV show or a movie, we can create a Foundry specifically for that particular franchise . . . because the ability to help with the automation of that content and production is massive." FAC ¶ 66. Plaintiff's well-pled factual allegations—contrary to Defendant's fanciful attorney argument—are true, and must be taken as such at this stage. *See Trader Joe's Co.*, 150 F.4th at 1048.

**5. Defendant's Arguments About Actual Confusion, Intent, and Likelihood of Product Expansion**

The Ninth Circuit has "repeatedly held" that these three factors "are not necessary to find a likelihood of confusion. *Trader Joe's Co.*, 150 F.4th at 1053-54; *see also Brixton*, 2026 WL 125200, at *3 ("evidence of actual confusion is not required to survive the motion to dismiss stage."); *Automated Sys. of Tacoma LLC v. Steris Corp.*, 2025 WL 3763925, at *6 (W.D. Wash. Dec. 30, 2025) (the court "need not consider" these three factors in denying motion to dismiss); *Good Clean Love, Inc.*, 2024 WL 4529028, at *6 ("[I]n the Ninth Circuit, a plaintiff need not present evidence of actual confusion in its complaint to survive a motion to dismiss. Consequently, this Court concludes that Defendant's argument that the Complaint lacks evidence of actual confusion meritless." (citations omitted)).

Nonetheless, the Amended Complaint contains numerous allegations going to Defendant's intent and the fact that it has recently begun aggressively expanding to compete in Plaintiff's core VFX market. As to intent, the Amended Complaint alleges that Defendant knew of Plaintiff and its FOUNDRY® Marks before it launched its own Foundry product (FAC ¶ 108) because the parties appear at the same trade shows, offer related products, and use one another's technology (*id.* ¶¶ 87-92, 97-99, 101). *See Brookfield Communications*, 174 F.3d at 1059 ("This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark.").

Defendant was also explicitly informed that its actions constitute trademark infringement prior to the filing of this lawsuit, and has only accelerated its infringing conduct. *Id.* ¶¶ 55-56, 95-96. And Plaintiff alleges that Defendant mimicked Plaintiff's marketing when launching its infringing Foundry product. FAC ¶ 84. These facts are sufficient to establish intent at the pleadings stage.

Defendant also misapprehends the law by arguing that the intent factor "favors dismissal." Doc. 42, at 22. Good faith is not a defense to trademark infringement, and thus "the lack of intent by a defendant is largely irrelevant in determining if consumers will be confused as to source." *Brookfield Communications*, 174 F.3d at 1059 (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 287 (6th Cir. 1997)). "Intent therefore is an issue whose resolution may only benefit the cause of a senior user, not of an alleged infringer." *Daddy's Junky*, 109 F.3d at 287; *see also Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1132 n.12 (9th Cir. 1998) ("Absence of malice is no defense to trademark infringement."); *Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 596 (5th Cir. 1985) ("[I]f potential purchasers are confused, no amount of good faith can make them less so.").

As to the parties' intent to expand, the Amended Complaint alleges that "Adobe is now using the Firefly Foundry brand as a means of entrance into the market of production of text, images, audio, 3D, vectors, results in high quality outputs for use in entertainment, digital media, short videos, long videos, films, advertisements and commercials, and the like"—the very goods and services that Foundry has been providing for years. FAC ¶ 86. The Amended Complaint also alleges that Defendant is positioning itself to use the Infringing Mark to explicitly enter the VFX space in which Foundry operates. *Id.* ¶¶ 82-83. Not only that, but Defendant has publicly stated its "plan . . . to have its Foundry-branded product integrate directly into Plaintiff's FOUNDRY®-branded product." *Id.* ¶ 83. Defendant ignores these allegations, and its arguments lack any merit.

### D. Plaintiff Adequately Pleads A Theory Of Reverse Confusion

The Amended Complaint similarly presents sufficient factual allegations to plead a plausible theory of reverse confusion.

Defendant appears to assert that reverse confusion theories must be spelled out in detail in pleadings. This is not the law. Defendant relies heavily upon *Surfvivor Media, Inc. v. Survivor*

*Productions*, 406 F.3d 625 (9th Cir. 2005) to support its position. But *Surfvivor* was a summary judgment case evaluating claims of reverse confusion under a completely different standard than that applied to pleadings. *See* 406 F.3d at 629-30. Foundry is not required to plead reverse confusion "with particularity." *See Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 933 (9th Cir. 2017). Instead, it need only plead facts supporting a plausible theory of reverse confusion. The *Marketquest* court explicitly distinguished *Surfvivor*, finding that "general allegation[s] that there was confusion '"as to whether some affiliation, connection, or association existed among the parties'" was sufficient to plead a reverse confusion theory. *Id.* ("This case is distinguishable from *Surfvivor* because, in that case, the theory of confusion not specifically pleaded in the complaint was implausible."). The First Amended Complaint does more than that: it explains that "Adobe's junior use of FOUNDRY is likely to create an association between Foundry's FOUNDRY Marks and Adobe, overtaking and swamping Foundry's senior, protected use of the FOUNDRY Marks," and that such association is "especially likely here given the size of Adobe and its status as a market leader." FAC ¶¶ 93-94.

Defendant argues that these allegations are inaccurate, which is not proper on a motion to dismiss. *See Trader Joe's Co*, 150 F.4th at 1048. These arguments are thus mere distractions and should not be given any weight. The Amended Complaint provides sufficient factual allegations to support a plausible reverse confusion theory, and should not be dismissed.

### E. The Remaining Counts of the Amended Complaint Should Proceed

Defendant does not meaningfully address the remaining counts of the Amended Complaint—*i.e.*, Plaintiff's federal and state unfair competition claims and its common law trademark infringement claim. *See generally* Doc. 42. They should not be dismissed. Even if the Court determines that Defendant's Motion raises these claims, because these "claims largely rise or fall with the trademark infringement claim," there is no basis to dismiss them at this stage. *Kip's Nuts*, 2019 WL 3766654, at *4.

### F. Defendant Does Not Present an Argument Regarding Dismissal With Prejudice

Defendant also fails to explain why its requested dismissal with prejudice would be appropriate, and cannot remedy that by taking up the argument for the first time in a reply brief. *Mancinelli v. Marriott Int'l, Inc.*, 2025 WL 3679686, at *1 (N.D. Cal. Dec. 18, 2025) (issues raised for the first time in a reply

brief are waived). If the Court were to find the Amended Complaint lacking in some respect in alleging likelihood of confusion, then the proper course would be to allow Plaintiff to file an Amended Complaint to address that aspect. *See* Fed. R. Civ. P. 15(a)(2).

## V. CONCLUSION

Defendant's Motion to Dismiss should be denied.

DATED: June 19, 2026

By: */s/ Jennifer M. Lantz*

Jennifer M. Lantz (SBN 202252)
**DUANE MORRIS LLP**
260 Homer Avenue, Suite 202
Palo Alto, CA 94301-2777
Phone: (650) 847-4150
Facsimile: (650) 847-4151
Email: jmlantz@duanemorris.com

Mark C. Comtois (*pro hac vice*)
mccomtois@duanemorris.com
**DUANE MORRIS LLP**
901 New York Avenue NW
Suite 700 East
Washington, DC 20001
Telephone: (202) 776-5240

Nicole K. McLaughlin (*pro hac vice*)
nkmclaughlin@duanemorris.com
Tyler R. Marandola (*pro hac vice*)
tmarandola@duanemorris.com
Brianna M. Vinci (*pro hac vice*)
bvinci@duanemorris.com
**DUANE MORRIS LLP**
30 S 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1198

*Attorneys for Plaintiff The Foundry Visionmongers Ltd*

**CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document to be electronically filed on June 19, 2026, with the Clerk using the CM/ECF System. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the court's CM/ECF system.

*/s/ Jennifer M. Lantz*

Jennifer M. Lantz