ARNOLD & PORTER KAYE SCHOLER LLP
DORI ANN HANSWIRTH (pro hac vice)
Email: dori.hanswirth@arnoldporter.com
250 West 55th Street
New York, NY 10019
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

ARNOLD & PORTER KAYE SCHOLER LLP
JOSEPH FARRIS (SBN 263405)
Email: joseph.farris@arnoldporter.com
HAFEEZ KHAN (SBN 339702)
Email: hafeez.khan@arnoldporter.com
Four Embarcadero Center, 14th Floor
San Francisco, CA 94111
Telephone: (415) 471-3100
Facsimile: (415) 471-3400

ARNOLD & PORTER KAYE SCHOLER LLP
OSCAR RAMALLO (SBN 241487)
Email: oscar.ramallo@arnoldporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

*Attorneys for Defendant Adobe Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

THE FOUNDRY VISIONMONGERS LTD.

Plaintiff,

vs.

ADOBE INC.,

Defendant.

Case No. 5:26-cv-02121-NW

Action Filed: March 11, 2026

**DEFENDANT ADOBE INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM AND STRIKE AFFIRMATIVE DEFENSES**

Judge: Honorable Noël Wise

Date: January 6, 2027
Time: 9:00 a.m.
Crtrm: 3, 5th Floor

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. FACTS .......... 2

III. ARGUMENT .......... 5

A. The Counterclaims plead each challenged element of fraud on the USPTO with the required particularity. .......... 5

1. At the pleading stage, Adobe need only raise a reasonable inference of fraud, not prove its allegations with clear and convincing evidence. .......... 5

2. The Counterclaims sufficiently plead reliance because they establish the USPTO would have rejected TFV's declarations but for the misrepresentations. .......... 6

a. If the USPTO had caught TVF's misrepresentations, it would have been required to reject the declarations. .......... 6

b. On a motion to dismiss, TFV may not contradict the allegations in the Counterclaims by speculating that the USPTO caught TFV's misrepresentations and improperly accepted the declarations. .......... 7

3. The Counterclaims sufficiently plead reliance was reasonable because the USPTO is entitled to trust the representations of counsel. .......... 10

4. The Counterclaims adequately plead knowledge because the Court can reasonably infer TFV's attorney knew the goods described in his declarations were broader than the goods listed in the registrations. .......... 11

5. The Counterclaims sufficiently plead intent because the Court can reasonably infer TFV intentionally obtained renewals and incontestability rights to which it was not entitled to wrongfully buttress its registrations with the maximum possible protection against descriptiveness challenges. .......... 12

a. The Counterclaims plead a plausible motivation for TFV to obtain broader incontestability rights than what it was entitled to obtain. .......... 12

b. At the pleading stage, TFV is not entitled to contradict the Counterclaims and raise factual disputes about its subjective intent. .......... 13

6. The Court should deny the request for judicial notice because the Court cannot take judicial notice that TFV lacked fraudulent intent. ........ 17

7. The Counterclaims adequately plead a false statement of fact because TFV's declarations misstated the facts rather than setting forth any legal arguments. ........ 18

B. The Court should deny the Motion to Strike fraud-based affirmative defenses because Adobe has adequately pleaded fraud. ........ 21

C. The Court should deny the Motion to Strike the Third Affirmative Defense because Adobe has adequately pleaded fraud and because Adobe need not establish fraud to raise a descriptiveness defense. ........ 21

D. In the alternative, the Court should grant leave to amend. ........ 22

IV. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albers v. Yarbrough World Sols., LLC*,
2020 WL 6064334 (N.D. Cal. Oct. 14, 2020) ........ 20

*Applied Information Sciences Corp. v. eBay, Inc.*,
511 F.3d 966 (9th Cir. 2007) ........ 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 5

*Belstone Cap., LLC v. Bellstone Partners, LLC*,
2017 WL 1153111 (E.D. Cal. Mar. 28, 2017) ........ 15

*Bertini v. Apple Inc.*,
2026 WL 1987624 (N.D. Cal. July 9, 2026) ........ 11, 12, 15

*Braxton-Secret v. A.H. Robins Co.*,
769 F.2d 528 (9th Cir. 1985) ........ 18

*Chutter, Inc. v. Great Mgmt. Grp., LLC*,
No. 91223018, 2021 WL 4494251 (T.T.A.B. Sept. 30, 2021), *rev'd on other grounds sub nom. Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333 (Fed. Cir. 2024) ........ 8, 10, 21

*CTF Dev., Inc. v. Penta Hosp., LLC*,
No. C 09-02429 WHA, 2009 WL 3517617 (N.D. Cal. Oct. 26, 2009) ........ 6

*Easton Diamond Sports, LLC v. Monsta Athletics, LLC*,
720 F. Supp. 3d 849 (C.D. Cal. 2024) ........ 6

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ........ 22

*Field v. Mans*,
516 U.S. 59 (1995) ........ 10

*For Life Products, LLC v. Universal Companies, Inc.*,
2021 WL 2953170 (W.D. Va. July 14, 2021) ........ 20

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016) ........ 16

*In re Bose Corp.*,
580 F.3d at 1243, 1245 ........ 5, 6

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008)........................................................................................ 9

*In re Kirsh*,
973 F.2d 1454 (9th Cir. 1992)........................................................................................ 10

*In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
828 F.2d 1567 (Fed. Cir. 1987)........................................................................................ 22

*Johnson v. Sky Chefs, Inc.*,
2012 WL 4483225 (N.D. Cal. Sept. 27, 2012) ........................................................................ 10

*Kaszuba v. Iancu*,
823 F. App'x 973 (Fed. Cir. 2020) ........................................................................................ 6

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)........................................................................................ 7, 16, 17

*La Terra Fina USA, LLC v. Reser's Fine Foods, Inc.*,
2024 WL 1973468 (N.D. Cal. May 3, 2024) ........................................................................ 11, 12

*Marketquest Grp., Inc. v. BIC Corp.*,
316 F. Supp. 3d 1234 (S.D. Cal. 2018)........................................................................................ 22

*Miller v. Yokohama Tire Corp.*,
358 F.3d 616 (9th Cir. 2004)........................................................................................ 20, 21

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) (en banc)........................................................................................ 11

*Pensmore Reinforcement Techs., LLC v. Cornerstone Mfg. & Distribution, Inc.*,
609 F. Supp. 3d 1092 (C.D. Cal. 2022)........................................................................ 5, 6, 11, 12

*Pinterest Inc. v. Pintrips Inc.*,
15 F. Supp. 3d 992 (N.D. Cal. 2014) ........................................................................................ 17

*Prospector Cap. Partners, Inc. v. Dttm Operations LLC*,
123 U.S.P.Q.2d 1832 (T.T.A.B. 2017) ........................................................................................ 8

*Ramirez v. Sotelo*,
2014 WL 12586445 (C.D. Cal. May 8, 2014) ........................................................................ 11

*Robi v. Five Platters, Inc.*,
918 F.2d 1439 (9th Cir. 1990)........................................................................................ 9

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
344 F. Supp. 3d 1147 (S.D. Cal. 2018)........................................................................................ 6

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006)........................................................................................ 20

*Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha*,
77 U.S.P.Q.2d 1917 (T.T.A.B. 2006) .......... 10

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 9

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .......... 6

*Tokidoki, LLC v. Fortune Dynamic, Inc.*,
2009 WL 2366439 (C.D. Cal. July 28, 2009) .......... 6, 10

*U.S. Postal Serv. v. Gregory*,
534 U.S. 1 (2001) .......... 8

*VDF FutureCeuticals, Inc. v. Sandwich Isles Trading Co.*,
2011 WL 6820122 (D. Haw. Dec. 27, 2011) .......... 20

*Young v. Lumenis, Inc.*,
492 F.3d 1336 (Fed. Cir. 2007) .......... 19

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) .......... 10

*Zobmondo Entm't, LLC v. Falls Media, LLC*,
602 F.3d 1108 (9th Cir. 2010) .......... 16

**<u>Statutes</u>**

15 U.S.C.
§ 1062(a) .......... 9
§ 1064(3) .......... 22
§ 1115(b) .......... 16

**<u>Other Authorities</u>**

37 C.F.R.
§ 2.173(e) .......... 7
§ 11.303 .......... 10, 21

Fed. R. Evid. 201(b) .......... 17

Fed. R. Civ. P
Rule 9(b) .......... 1, 5, 11, 12
Rule 12(b)(6) .......... 6

U.S. Patent & Trademark Office, Announcement of Pilot Program to Allow Amendments to Identifications of Goods and Services in Trademark Registrations Due to Technology Evolution (Sept. 1, 2015) https://www.uspto.gov/trademarks/trademark-updates-and-announcements/trademark-user-input ........ 18

**OPPOSITION**

## I. INTRODUCTION

Adobe Inc. ("Adobe") has pleaded that The Foundry Visionmongers Ltd. ("TFV") secured incontestable trademark registrations by knowingly and intentionally telling the United States Patent and Trademark Office ("USPTO") something that was not true: that a sweeping list of computer software goods was already "listed in the existing registration" for each of its FOUNDRY trademark registrations. It was not.

Against those allegations, TFV offers a trial brief rather than a motion to dismiss. It insists that fraud must be proven "to the hilt" by clear and convincing evidence and that Adobe's allegations must exclude every innocent explanation. TFV speculates that the examiner detected its misrepresentations, devised an unarticulated legal theory under which TFV's broadening of the scope of its registration upon renewal was permissible, and approved the renewals despite uncovering the misrepresentations—a theory that contradicts the allegations in the Counterclaims and has no support in the USPTO's trademark prosecution files attached to them. And it asks the Court to take judicial notice of a 2014 filing in an unrelated Adobe registration without context, made before the USPTO's evolving-technology procedure existed (the very procedure TFV evaded to secure its improper renewals), and to infer from that single filing both an industry-wide norm and the state of mind of TFV's counsel a decade later.

None of that is appropriate on a motion to dismiss. Rule 9(b) requires Adobe to state the circumstances of fraud with particularity, and Adobe has done so, attaching the false declarations themselves to the Counterclaims. Knowledge and intent may be alleged generally and need only be supported with facts raising a reasonable inference of scienter. The question on this motion is not whether Adobe will ultimately prevail at trial, but whether it is entitled to discover and offer evidence in support of its claim as this case proceeds. It is. The Court should deny TFV's Motion to Dismiss Count I and its Motion to Strike Adobe's Affirmative Defenses, and deny the request for judicial notice.

## II. FACTS

In 2018, TFV obtained three different registrations for three marks—FOUNDRY, FOUNDRY, and FOUNDRY—each containing the same identification of goods and services in Classes 9 and 42. Dkt. 59 ¶¶ 169, 176. To obtain these registrations, TFV had to narrow its Class 9 goods from "computer software" generally to software on "[p]re-recorded tapes, pre-recorded cassettes, pre-recorded compact discs and pre-recorded digital versatile discs." Dkt. 59 ¶¶ 170–77. By 2024, when the registrations were up for renewal, widespread descriptive use of "foundry" left the registrations vulnerable to a descriptiveness challenge—a challenge that an incontestability declaration would foreclose. *Id.* ¶¶ 193, 202-211.

While TFV could renew and seek incontestability in Class 42 for the full scope of its registration, it faced an obstacle to obtaining incontestability that would have gutted the scope of the incontestability for its Class 9 registration: it was no longer using its marks on pre-recorded tapes, cassettes, compact discs, or digital versatile discs—the only media on which certain of its registered Class 9 software goods were identified. *Id.* ¶¶ 188, 191. Because TFV was not using the marks on these media, it was not entitled to renew its registrations or to obtain incontestable status as to all the following goods:

> computer software, namely, tools for visual effects for entertainment films and video, computer software for cleaning film, computer software for cleaning digital film, computer software for analyzing, repairing and reconstructing digitised images, computer software for analyzing, repairing, reconstructing frames within sequences of digitised images, computer software for creating, viewing, editing, processing, manipulating, managing, storing, organizing, importing, and exporting digital images, digital artwork, graphics, text, and data, computer software for organising and viewing photographs, computer software for digital drawing, sketching and painting, computer software for 3D animation and visual effects, computer software for 3D content creation, computer software for design, sketching, 3D modelling and photo visualization related to concept and product design for entertainment films and video, computer software incorporating node-based, editorial and finishing tools, for creating visual effects for entertainment films and video, software for creating audio, video and/or image files in the field of computer operating systems, namely, creating a framework for time variable media, computer software adapted for teaching in the field of digital image creation and design, 3D animation and visual effects for entertainment films and video, electronic downloadable publications, namely, teaching materials in the field of digital image creation and design, 3D animation and visual effects[.]

*Id.* ¶¶ 176, 188. TFV's right to renew and to seek incontestability in Class 9 was limited to certain "software plug in tools for visual effects" and "computer software for cleaning film." *See id.* TFV's overreach and decision to mislead the USPTO puts its entire registrations at risk for cancellation.

But TFV had other options that could have resulted in a legitimate renewal of at least part of its registrations. One path was that it could have deleted the goods on which it no longer used its marks and renew and claim incontestability as to the remainder. *Id.* ¶ 188. Another path was that it could have petitioned the USPTO under its evolving-technology procedure to amend the Class 9 identifications to update how its software was being delivered at that point in time; but as a condition, it would have had to agree not to file a declaration of incontestability as to the evolved goods for at least five years. *Id.* ¶ 192.

In seeking immediate incontestable status as to all of its goods and services, rather than as to just the subset to which it was entitled, TFV took a third, illegitimate path. *Id.* ¶ 193. On August 23, 2024, TFV's counsel submitted three declarations, one for each of its three registrations. Each declaration contained the following false statement:

> The mark is in use in commerce on or in connection with the following goods or services **listed in the existing registration** for this specific class: **computer software**, *namely, tools for visual effects for entertainment films and video, computer software for cleaning film, computer software for cleaning digital film, computer software for analyzing, repairing and reconstructing digitised images, computer software for analyzing, repairing, reconstructing frames within sequences of digitised images, computer software for creating, viewing, editing, processing, manipulating, managing, storing, organizing, importing, and exporting digital images, digital artwork, graphics, text, and data, computer software for organizing and viewing photographs, computer software for digital drawing, sketching and painting, computer software for 3D animation and visual effects, computer software for 3D content creation, computer software for design, sketching, 3D modelling and photo visualization related to concept and product design for entertainment films and video, computer software incorporating node-based, editorial and finishing tools, for creating visual effects for entertainment films and video, software for creating audio, video and/or image files in the field of computer operating systems, namely, creating a framework for time variable media, computer software adapted for teaching in the field of digital image creation and design, 3D animation and visual effects for entertainment films and video, electronic downloadable publications, namely, teaching materials in the field of digital image creation and design, 3D animation and visual effects*; computer software, namely, computer software plug in tools for visual effects for entertainment films and video; computer software for cleaning film; and replacement parts for all the aforesaid goods.

*Id.* ¶ 184. (emphasis added). This statement was false as to all the goods shown above in italics. This is because the goods "listed in the existing registration" were limited, and that limitation was removed in the long list of goods described in the declaration. *Id.* ¶ 187. In particular, the goods "listed in the existing registration" included prefatory words that narrowed TFV's rights to "computer software" solely to the extent that the computer software was sold on "Pre-recorded tapes, pre-recorded cassettes, pre-recorded compact discs and prerecorded digital versatile discs." *Id.*

The same declarations asked the USPTO to "permanently delete[]" the words "Pre-recorded tapes, pre-recorded cassettes, pre-recorded compact discs and pre-recorded digital versatile discs all featuring," as though those words described freestanding goods rather than limiting the software goods that followed. Dkt. 59 ¶¶ 186–87. The declarations did not explain that these words were included in the registrations to limit the scope of the goods. Dkt. 59-3 at 149; 59-4 at 146; Dkt. 59-5 at 153. Instead, the declarations passed them off as standalone goods. *See id.*

The effect was to improperly broaden TFV's registrations from software on specified pre-recorded media to computer software generally. Dkt. 59 ¶¶ 185, 189. If the USPTO examiner had caught the misrepresentations, she would have been required to reject the declarations because a trademark renewal can only issue if the renewed goods are the same as, or narrower than, the goods in the original registration. *Id.* ¶ 188. Notably, in its Motion to Dismiss, TFV does not contend that there was any valid basis on which it could have renewed or obtained incontestable rights in the broadened identification. *See generally* Dkt. 64. Instead of catching TFV's misrepresentations, the USPTO relied on them. Dkt. 59 ¶ 194. It accepted the declarations, renewed the "Foundry" registrations, and acknowledged TFV's declarations of incontestability. *Id.*

TFV now moves to dismiss Count I of the Counterclaims and to strike Adobe's Second Affirmative Defense (fraud), the portions of its Third Affirmative Defense (invalidity) based on fraud and descriptiveness, and its Sixth Affirmative Defense (waiver, estoppel, and laches) to the extent based on fraud. Dkt. 64 at 14–15. In doing so, TFV raises disputed issues of fact concerning the USPTO's reliance, TFV's knowledge and intent, and its false statement of fact. *Id.* at 8–14. TFV also asks the Court to take judicial notice of the prosecution history of an unrelated 2014 Adobe

registration for the mark SAVA without context to purportedly establish that TFV lacked fraudulent intent. *Id.* at 7–8; Dkt. 64-1.

## III. ARGUMENT

### A. The Counterclaims plead each challenged element of fraud on the USPTO with the required particularity.

TFV's motion does not identify any missing element of fraud. It instead disputes the facts Adobe has pleaded on four elements—a false statement of material fact, knowledge of its falsity, intent to deceive, and USPTO reliance—and asks the Court to weigh them under a trial-stage standard, which Rule 12 does not permit. Adobe has pleaded each challenged element with the particularity required at this stage.

#### 1. At the pleading stage, Adobe need only raise a reasonable inference of fraud, not prove its allegations with clear and convincing evidence.

Throughout its motion, TFV asks the Court to apply the standard that would govern at trial. It insists that fraud must be "proven 'to the hilt' with clear and convincing evidence," that "any doubt must be resolved against the charging party," and that Adobe's allegations must "exclude the possibility" of an innocent explanation. Dkt. 64 at 7–8, 10 (quoting *In re Bose Corp.*, 580 F.3d at 1243, 1245, and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)[1]).

That is not the standard on a motion to dismiss. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud," but provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A claim of fraud on the USPTO is therefore adequately pleaded where the pleading identifies the false statements, who made them and when, and alleges facts from which the declarant's knowledge and deceptive intent may reasonably be inferred. *Pensmore Reinforcement Techs., LLC v. Cornerstone Mfg. & Distrib., Inc.*, 609 F. Supp. 3d 1092, 1102, 1104 (C.D. Cal. 2022) (applying a "reasonable inference" standard to knowledge and intent to deceive at the pleading stage).

As the Ninth Circuit has explained in affirming fraud allegations that survived a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is

[1] The section of *Twombly* from which TFV quotes discusses a plaintiff's burden of proof at trial to establish an antitrust conspiracy. *Twombly*, 550 U.S. at 554.

entitled to offer evidence to support the claims." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (citation omitted). Thus, "[a]t the pleading stage," a claimant alleging inequitable conduct or fraud on the USPTO "is not required to allege facts supporting the conclusion that specific intent to deceive is the single most reasonable inference to be drawn from the factual allegations." *Pensmore*, 609 F. Supp. 3d at 1104.

Instead, "a mere reasonable inference is quite enough to survive"—that is, an inference "that is plausible and that flows logically from the facts alleged." *Id.* at 1102, 1104 (citation omitted); *see also Kaszuba v. Iancu*, 823 F. App'x 973, 980 (Fed. Cir. 2020) ("[O]n a motion to dismiss pursuant to Rule 12(b)(6), we are not concerned with whether HVL can prove its allegations of fraud and intent to deceive on the merits."); *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 344 F. Supp. 3d 1147, 1160 (S.D. Cal. 2018) ("Defendant's citation to *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) is inapposite as it involved an appeal of the TTAB's ruling on the merits, not a motion to dismiss, that Bose committed fraud on the PTO."); *CTF Dev., Inc. v. Penta Hosp., LLC*, No. C 09-02429 WHA, 2009 WL 3517617, at *5–6 (N.D. Cal. Oct. 26, 2009) (only a plausible inference must be pleaded).

As discussed below, the Counterclaims present facts raising a reasonable inference of fraud.

**2. The Counterclaims sufficiently plead reliance because they establish the USPTO would have rejected TFV's declarations but for the misrepresentations.**

**a. If the USPTO had caught TFV's misrepresentations, it would have been required to reject the declarations.**

A claimant alleging fraud on the USPTO may plead reliance by alleging "that the patent [or trademark] would not have issued but for the misrepresentation." *Easton Diamond Sports, LLC v. Monsta Athletics, LLC*, 720 F. Supp. 3d 849, 863 (C.D. Cal. 2024); *see also Tokidoki, LLC v. Fortune Dynamic, Inc.*, 2009 WL 2366439, at *11 (C.D. Cal. July 28, 2009) (holding defendant established reliance because plaintiff "misrepresented facts to the PTO concerning the extent of its use of the mark" and the "PTO relied on the representations of [plaintiff] … by issuing [a] Trademark Registration"). The Counterclaims do just this, alleging in detail that the USPTO would not have renewed TFV's registrations or granted them incontestable status, but for TFV's misrepresentations.

Specifically, Adobe alleges that TFV falsely stated in its renewal declarations that it was renewing its trademark registrations for "goods or services **listed in the existing registration[s]**." Dkt. 59 ¶ 184 (emphasis added in Counterclaims). Adobe alleges those statements were false because the goods listed in the then-existing registration were different from, and narrower than, the goods listed in the renewal declarations. *Id.* ¶ 185. In particular, the declarations removed words of limitation in the description of the goods that narrowed TFV's rights solely to software on specific media, i.e., pre-recorded tapes, pre-recorded cassettes, pre-recorded compact discs, and pre-recorded digital versatile discs. *Id.*

Adobe further alleges that if the USPTO had known of the misrepresentation, it would have been required to deny renewal and incontestability status because a trademark renewal cannot be issued for a description of goods that is broader than the description in the original registration. *Id.* ¶ 188 (citing *Bose*, 580 F.3d at 1247); *see also id.* ¶ 178 & n.3 (citing 37 C.F.R. § 2.173(e)). Because the Counterclaims plead with particularity that the trademark renewals and incontestability status determinations would not have issued but for the misrepresentations, the Counterclaims sufficiently plead reliance.

**b. On a motion to dismiss, TFV may not contradict the allegations in the Counterclaims by speculating that the USPTO caught TFV's misrepresentations and improperly accepted the declarations.**

In its Motion to Dismiss, TFV conceives of its own alternate version of the facts. It speculates there was no reliance because the USPTO examiner might have somehow learned of the misrepresentations and issued the renewals anyway. Dkt. 64 at 9 (arguing "the Trademark Office ***did not*** rely on any supposed representations about what goods and services were 'identified in the then-existing registrations'"). But the Counterclaims do not allege that the examiner learned of the misrepresentations. On a motion to dismiss, the Court is required to accept the allegations of the Counterclaims as true and draw all inferences in Adobe's favor; TFV cannot simply posit new facts that defeat liability. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) (holding a party moving to dismiss may not introduce a "new version of the facts").

*First*, in arguing that the USPTO did not rely on TFV's misrepresentations because it took five months to examine the renewals, TFV improperly draws all inferences in its favor. Dkt. 64 at 9. There is a highly plausible alternative explanation for why the USPTO took five months to examine the renewals—because it has a high volume of work, not because it was spending five months scrutinizing these particular declarations for inaccuracies. Indeed, the Trademark Trial and Appeal Board has stated that this is exactly the situation the USPTO faces:

> The vast volume of trademark application and registration maintenance filings made with the USPTO is such that **the agency typically cannot actively investigate the truth or falsity of individual declarations**. The agency, as well as applicants and registrants, and all who rely on the accuracy of the Registers of marks and the submissions made to the USPTO in furtherance of obtaining or maintaining registration, must be able to rely on declarations and the truth of their contents.

*Chutter, Inc. v. Great Mgmt. Grp., LLC*, No. 91223018, 2021 WL 4494251, at *12 (T.T.A.B. Sept. 30, 2021) (emphasis added), *rev'd on other grounds sub nom. Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333 (Fed. Cir. 2024). TFV's request that the Court infer its preferred explanation for the USPTO's action in the face of other plausible explanations is improper on a motion to dismiss.

*Second*, TFV does not identify anything in the record that establishes that the examiner actually knew of the misrepresentations. Rather, TFV argues that the Court should infer such knowledge because the examiner did not "lack anything required" for the office to have done an "independent assessment" of the file. Dkt. 64 at 9. But the possibility that the examiner could have uncovered TFV's affirmative misrepresentations if she had scrutinized the declarations and carefully compared them to the registrations does not mean that she did so. Again, this would be an improper inference in TFV's favor for the Court to draw.

*Third*, to accept TFV's position, the Court would also need to accept that the examiner not only knew TFV had misrepresented the scope of its goods but allowed the renewal anyway, intentionally violating the governing statute and regulations that would have required rejecting the declarations. The normal presumption is the opposite: "a 'presumption of regularity attaches to the procedures of government agencies,'" and a tribunal will not assume "improper" conduct absent clear and convincing evidence. *Prospector Cap. Partners, Inc. v. Dttm Operations LLC*, 123 U.S.P.Q.2d 1832, 1834 (T.T.A.B. 2017) (quoting *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10

(2001)). It would be wholly improper for the Court to make a factual finding on a motion to dismiss that the USPTO examiner intentionally violated the law. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (holding a court on a motion to dismiss must accept any plausible explanation of the facts supporting denial of the motion).

While TFV suggests that there is an alternative interpretation of the law under which renewal would have been proper, TFV fails to explain what that alternative interpretation of the law is. Dkt. 64 at 9, 13–14. Moreover, the USPTO's complete prosecution files for all three marks are attached to the Counterclaims. Dkt. 59 ¶ 169; Dkt. 59-3; Dkt. 59-4; Dkt. 59-5. There is nothing in those files showing that TFV made an argument explaining an alternative interpretation of the law to the examiner.

TFV's hypothesis that the USPTO could have crafted some undisclosed, idiosyncratic interpretation of the law before accepting the filings has no support in the Counterclaims or the prosecution files. On a motion to dismiss, the Court must accept the allegations of the Counterclaims as true, not the moving party's rank speculation. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (holding a court must accept any factual theory in a complaint "that is not facially implausible").

*Finally*, TFV argues that the USPTO could not have relied on its misrepresentation because "an examination is the opposite of reliance." Dkt. 64 at 9. This argument fares no better. In every case where a party challenges the issuance or renewal of a trademark for fraud, the USPTO conducts some examination before issuance. *See* 15 U.S.C. § 1062(a) (requiring the USPTO to conduct examinations). But courts have never held that the mere fact the USPTO examined a trademark renewal means there was no reliance on the false statements made therein. *See, e.g.*, *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) (affirming cancellation of a renewed trademark after USPTO examination of the renewal). If it were otherwise, no one could ever establish fraud on the USPTO.

Putting TFV's imagined scenarios to the side, the Counterclaims allege in detail that the USPTO would not have accepted the renewals absent reliance on TFV's misrepresentations. Accordingly, the Counterclaims adequately plead reliance.

**3. The Counterclaims sufficiently plead reliance was reasonable because the USPTO is entitled to trust the representations of counsel.**

Although TFV's motion argues that the USPTO did not rely at all on the misrepresentations, it notably does not argue that reliance would have been unreasonable. Dkt. 64 at 8–9. Accordingly, any argument that reliance was unreasonable has been waived. *Johnson v. Sky Chefs, Inc.*, 2012 WL 4483225, at *10 n.10 (N.D. Cal. Sept. 27, 2012) (holding court "need not consider arguments raised for the first time in a reply brief") (quoting *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)).

At most, TFV speculates that the USPTO must have uncovered the misrepresentation by comparing the description of the then-existing registrations with the language in TFV's renewal declarations. Dkt. 64 at 9, 11, 13. But the Court would be required to reject this speculation because a fraud defendant may not escape liability by accusing the victim of negligence in failing to uncover the fraud. *Field v. Mans*, 516 U.S. 59, 70 (1995) ("[A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation.") (quoting Restatement (Second) of Torts § 540 (Am. L. Inst. 1977)); *In re Kirsh*, 973 F.2d 1454, 1459 (9th Cir. 1992) (holding that "[e]ven constructive notice of a public record which would reveal the true facts" is insufficient to vitiate a fraud victim's right to rely on the fraudster's false statements) (internal quotation marks omitted). And the USPTO "relies on the thoroughness, accuracy and honesty of each applicant." *Tokidoki*, 2009 WL 2366439, at *11 (quoting *Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha*, 77 U.S.P.Q.2d 1917 (T.T.A.B. 2006)). "[T]he agency typically cannot actively investigate the truth or falsity of individual declarations." *Chutter*, 2021 WL 4494251, at *12.

Moreover, the Counterclaims allege that the fraudulent declarations were submitted by "an attorney at a prominent law firm who presents himself as having 'more than 20 years of experience'" in the IP field, including trademark prosecution. Dkt. 59 ¶ 190. As a practicing attorney before the USPTO, he was under a duty to act with the "utmost honesty and good faith" when he submitted declarations under penalty of perjury. *Id.* ¶ 181; *see also* 37 C.F.R. § 11.303 (describing the duty of candor before the USPTO). Accordingly, the examiner was justified in trusting that the declarations she received accurately described the goods in the then-existing registrations. She was not required

to assume that TFV's counsel was lying to her and check his declarations against the registrations. Here, too, TFV's argument requires the Court to improperly draw all inferences in its own favor, and should therefore be disregarded.

**4. The Counterclaims adequately plead knowledge because the Court can reasonably infer TFV's attorney knew the goods described in his declarations were broader than the goods listed in the registrations.**

Rule 9(b)'s heightened pleading standard does not apply to the element of knowledge. Rather, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A claimant "may aver scienter generally, just as the rule states—that is, simply by saying that scienter existed." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) (en banc); *Ramirez v. Sotelo*, 2014 WL 12586445, at *6 (C.D. Cal. May 8, 2014) (allegation that defendant "made 'willful misrepresentations'" to the USPTO sufficient). The party alleging fraud need only establish a "reasonable inference" of knowledge, meaning "one that is plausible and that flows logically from the facts alleged." *Pensmore*, 609 F. Supp. 3d at 1102.

The Counterclaims more than meet this standard. Adobe specifically alleges that TFV falsely stated its then-existing registrations had a particular broad description of goods and services, when, in truth, the actual description of goods and services was different and narrower. Dkt. 59 ¶¶ 184–87. Adobe also alleges that the declarations were signed by an attorney at a prominent law firm with decades of relevant experience. *Id.* ¶ 190. The Court can reasonably infer from these allegations that TFV's attorney (1) read the descriptions of the goods in the registrations before signing the declarations and, therefore, (2) knew that the descriptions in his declarations were impermissibly broader than the descriptions in the registrations. Nothing more is required for Adobe to plead the knowledge element. *See Pensmore*, 609 F. Supp. 3d at 1102.

In its Motion to Dismiss, TFV asserts that the experience level of counsel cannot establish knowledge of falsity, but it cites only to cases where the claimant had failed to plead a false statement in the first instance. *See* Dkt. 64 at 10 (citing *Bertini v. Apple Inc.*, 2026 WL 1987624, at *6 (N.D. Cal. July 9, 2026); *La Terra Fina USA, LLC v. Reser's Fine Foods, Inc.*, 2024 WL 1973468, at *2 (N.D. Cal. May 3, 2024)).

In *Bertini*, the claimant's theory of fraud required it to establish that the trademark applicant falsely claimed ownership in a trademark despite conflicting rights that were "*clearly established*, for example, by a court decree, by the terms of a settlement agreement, or by a registration." *Bertini*, 2026 WL 1987624, at *4. The complaint alleged only in a conclusory manner that "another person" used the mark "with clear priority rights" without identifying a court decree, settlement agreement, or registration. *Id.* As a result, the court held the applicant did not make any false statement. *Id.* In that context, where there was no false statement to begin with, "[t]he experience level of counsel [did] not show one way or another whether the counsel in question intended to deceive or had knowledge of falsity." *Id. La Terra Fina* involves the same fact pattern as *Bertini*. *La Terra Fina*, 2024 WL 1973468, at *2 (no falsity or knowledge where claimant had "not alleged any facts which would give rise to an inference La Terra Fina knew anyone else was using the same or substantially the same mark," much less use by those with "clearly established" rights).

Here, by contrast, there was a false statement because the goods that TFV's counsel described in his declarations as being included in the then-existing registrations were not actually in the registrations. Dkt. 59 ¶¶ 184–87. In the context of this case, the fact that TFV's attorney is capable of reading and understanding the difference between the goods described in the registrations and the goods described in his declarations is sufficient to infer knowledge of falsity.

**5. The Counterclaims sufficiently plead intent because the Court can reasonably infer TFV intentionally obtained renewals and incontestability rights to which it was not entitled to wrongfully buttress its registrations with the maximum possible protection against descriptiveness challenges.**

**a. The Counterclaims plead a plausible motivation for TFV to obtain broader incontestability rights than what it was entitled to obtain.**

As with the knowledge element, Adobe need not plead intent with particularity. Fed. R. Civ. P. 9(b). Adobe need only plead facts establishing a reasonable inference of an intent to deceive. *Pensmore*, 609 F. Supp. 3d at 1102.

Again, the allegations of the Counterclaims exceed this standard. They allege that, at the time TFV was renewing its registrations in 2024, TFV was facing a serious threat to the protectability of its marks: the term "foundry" had become a descriptive term for a provider of

software. Dkt. 59 ¶ 193; *see also id.* ¶¶ 199–215. TFV could foreclose this threat if it obtained "incontestable" status for its trademark registrations. However, due to the technological evolution in how software is delivered, TFV was no longer offering software on media described in its registrations—i.e., pre-recorded tapes, pre-recorded cassettes, pre-recorded compact discs, and pre-recorded digital versatile discs. *Id.* ¶¶ 188, 191. The USPTO had a program to waive the normal requirement that a renewal could not modify or broaden the goods in a registration. *Id.* ¶¶ 191–92. But applying for that waiver would come at a significant cost, namely, the USPTO conditioning its grant of a waiver on TFV agreeing not to seek incontestability status on the affected goods for an additional five years. *Id.* ¶ 192.

TFV was not willing to accept the risk of a descriptiveness challenge to any part of its registrations. *Id.* ¶ 193. Instead, TFV submitted a false declaration that the goods "listed in the existing registration" were not limited to certain types of pre-recorded media. *Id.* ¶¶ 184–87. By deceiving the USPTO, TFV unlawfully gained immediate, incontestable status for its registrations. *Id.* ¶¶ 193–94. Because the Court can reasonably infer that TFV acted intentionally when it improperly renewed and obtained incontestability rights for its registrations, the Court must deny the Motion to Dismiss.

**b. At the pleading stage, TFV is not entitled to contradict the Counterclaims and raise factual disputes about its subjective intent.**

To avoid liability, the Motion to Dismiss again posits a fact that is nowhere found in the Counterclaims. TFV states that it "provided the USPTO with the information plaintiff alleges [it] withheld." Dkt. 64 at 11 (quoting *Belstone Cap., LLC v. Bellstone Partners, LLC*, 2017 WL 1153111, at *4 (E.D. Cal. Mar. 28, 2017)). The Motion to Dismiss asserts that the examiner "had the entire description in front of her" and that the goods listed in the then-existing registration were presented "side-by-side" with the proposed modifications. Dkt. 64 at 11.

Not so. Below is a screenshot of what the examiner would have seen when reviewing the declarations:

> For International Class 009, this filing does **NOT** cover the following goods or services for this specific class listed in the registration, and these goods or services are to be permanently **deleted** from the registration: Pre-recorded tapes, pre-recorded cassettes, pre-recorded compact discs and pre-recorded digital versatile discs all featuring
>
> The mark is in use in commerce on or in connection with the following goods or services listed in the existing registration for this specific class: computer software, namely, tools for visual effects for entertainment films and video, computer software for cleaning film, computer software for cleaning digital film, computer software for analyzing, repairing and reconstructing digitised images, computer software for analyzing, repairing, reconstructing frames within sequences of digitised images, computer software for creating, viewing, editing, processing, manipulating, managing, storing, organizing, importing, and exporting digital images, digital artwork, graphics, text, and data, computer software for organising and viewing photographs, computer software for digital drawing, sketching and painting, computer software for 3D animation and visual effects, computer software for 3D content creation, computer software for design, sketching, 3D modelling and photo visualization related to concept and product design for entertainment films and video, computer software incorporating node-based, editorial and finishing tools, for creating visual effects for entertainment films and video, software for creating audio, video and/or image files in the field of computer operating systems, namely, creating a framework for time variable media, computer software adapted for teaching in the field of digital image creation and design, 3D animation and visual effects for entertainment films and video, electronic downloadable publications, namely, teaching materials in the field of digital image creation and design, 3D animation and visual effects; computer software, namely, computer software plug in tools for visual effects for entertainment films and video; computer software for cleaning film; and replacement parts for all the aforesaid goods
>
> For the remaining goods or services, the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with these goods or services. Also, no final decision adverse to the owner's claim of ownership of such mark for those goods or services exists, or to the owner's right to register the same or to keep the same on the register; and, no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or the courts exists.

Dkt. 59-3 at 149; 59-4 at 146; Dkt. 59-5 at 153.

It is impossible to tell from the declaration that the limiting words “Pre-recorded tapes, pre-recorded cassettes, pre-recorded compact discs and recorded digital versatile discs all featuring” in the existing registration ***modify and limit*** the words “computer software, namely, tools for visual effects …” *etc.*, and were included in the original registration as guardrails against an overly broad set of identifications. *See id*. Instead of explaining to the examiner that “Pre-recorded tapes” *etc.*, were words of limitation, the declarations affirmatively misrepresent those words as standalone goods to be deleted from the registration. The only way the examiner could have accurately determined the function of the words “Pre-recorded tapes, pre-recorded cassettes, pre-recorded digital versatile discs all featuring” in the registration’s description of goods and services would be to compare the language in the declaration with the registration.[2] *Compare* Dkt. 59-3 at 149; 59-4 at 146; Dkt. 59-5 at 153 *with* Dkt. 59-3 at 101; Dkt. 59-4 at 97; Dkt. 59-5 at 104.

---

[2] TFV also submitted a cover-sheet with each declaration that described the proposed amendments. Dkt. 59-3 at 144; Dkt. 59-4 at 141; 59-5 at 148. The cover-sheets were inaccurate and misleading in the same way as the declarations were inaccurate and misleading.

As discussed in Section III.A.2, *supra*, the examiner did not make that comparison. If she had, she would have been required to reject the declarations. And, as discussed in Section III.A.3, *supra*, the examiner had no obligation to look back to the original registrations. The examiner was entitled to trust that TFV's counsel had accurately described the goods in the registrations. She was not required to be on guard for TFV's then-counsel's improper conduct.[3]

Next, TFV argues that it would not have been worth it for TFV to commit fraud because TFV could still have obtained incontestable rights in a subset of the goods and services if TFV had followed the rules. Dkt. 64 at 11–12. In effect, TFV asks the Court to make a factual determination that TFV could not have committed fraud because the incontestable rights it wrongfully obtained were not subjectively important enough to TFV to take the risk of being uncovered as a fraudster. TFV asserts that Adobe has failed to address this supposed "disconnect." Dkt. 64 at 12.

First, the incontestable rights that TFV improperly obtained are in fact objectively valuable because they comprise almost the entirety of TFV's rights in Class 9. *See* Dkt. 59 ¶ 176; *see also* Section II, *supra*. Absent those rights, its Class 9 registration would have been significantly limited to cover only "software plug in tools for visual effects" and "computer software for cleaning film."

But, in any event, because the Court is ruling on a motion to dismiss, it cannot draw inferences in TFV's favor concerning its motivations. The inference consistent with the Counterclaims that the Court should draw is that the reason that TFV cut corners to improperly obtain incontestable rights on a subset of goods in its registration is that TFV thought incontestable rights in that subset of goods were sufficiently valuable to commit fraud to obtain them. TFV's *post*

[3] By contrast, in *Belstone Cap., LLC v. Bellstone Partners, LLC*, 2017 WL 1153111, at *4 (E.D. Cal. Mar. 28, 2017), on which TFV relies, the defendant sought to renew the mark "Bellstone" alone and submitted a specimen of use with the renewal that showed it used the mark as "Bellstone Partners, LLC." The court held that the addition of "Partners, LLC" was immaterial to whether the renewal was improper because the two additional words did not change the mark's commercial impression, and the examiner must have seen that the defendant was using the longer version of the mark because that fact was disclosed on the specimen itself. *Id.* Here, by contrast, if the examiner had discovered TFV's misrepresentation, she would have been required to reject the declarations. Furthermore, the declarations contained affirmative misrepresentations that she could not have uncovered unless she compared the original registrations side-by-side with the declarations. *Bertini*, on which TFV also relies, is far off the mark. There, the court held that there was nothing deceptive about simultaneously (1) submitting a specimen of use, and (2) requesting an extension of time to submit a specimen of use should the USPTO find the submitted specimen insufficient. *Bertini*, 2026 WL 1987624, at *5.

*hoc* rationalization that the rights it wrongfully obtained were not important to it raises factual issues about TFV's subjective intent that the Court may not resolve on a motion to dismiss. *See Khoja*, 899 F.3d at 999 (if defendants may "present their own version of the facts at the pleading stage" and courts accept them as true, "it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief").

TFV further argues that the benefits of an incontestable registration are "trivial" because the lack of a registration would "not circumscribe [TFV's] '*remedies* against confusion with its valid mark.'" Dkt. 64 at 12 (quoting *Applied Information Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 971 (9th Cir. 2007)). The problem with this argument is that, by the time TFV renewed its registrations, its marks had become descriptive, which would negate their validity entirely. *See* Dkt. 59 ¶¶ 193, 199-215; *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (merely descriptive marks "are not inherently distinctive and are therefore not entitled to automatic trademark protection"). Incontestable status was valuable, not trivial, to TFV because it completely bars a challenge based on descriptiveness alone. *See* 15 U.S.C. § 1115(b). The Court cannot make a factual finding on a motion to dismiss that TFV subjectively believed the benefits of incontestability to be "trivial."

Finally, TFV argues that an Adobe filing in 2014 for the unrelated SAVA mark proves that TFV had no intent to deceive the USPTO when TFV submitted false incontestability declarations in 2024 for its descriptive "foundry" marks. Dkt. 64 at 12–13; Dkt. 64-1. An Adobe filing a decade earlier—which, based on the record before the Court, TFV did not even know about when it filed its fraudulent declarations—proves nothing about TFV's intent. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105–06 (2016) (holding "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct" and that courts should not "look to facts that the [actor] neither knew nor had reason to know at the time he acted"). The Court should reject this argument on this basis alone.[4]

[4] Additionally, as discussed in detail in Section III.A.6, infra, Adobe's filing is not comparable to TFV's fraudulent declarations, and TFV relies on the filing to prove (incorrect) factual assertions that are not judicially noticeable.

In sum, the Counterclaims allege that TFV had a powerful motive to deceive the USPTO, namely, securing incontestable status before mounting descriptive uses of "foundry" could be used to challenge its marks, and that TFV's experienced counsel chose to misrepresent the goods in its existing registrations rather than seek a waiver that would have delayed incontestability by five years. Those allegations readily support a reasonable inference of intent to deceive, and each of TFV's counterarguments improperly asks the Court to draw inferences in TFV's favor at the pleading stage.

**6. The Court should deny the request for judicial notice because the Court cannot take judicial notice that TFV lacked fraudulent intent.**

TFV asks the Court to take judicial notice of the prosecution history of Adobe's SAVA registration and then to use that history to conclude that TFV lacked fraudulent intent. Dkt. 64 at 7–8, 12–13; Dkt. 64-1. The Court should decline. USPTO records are "noticeable only for the limited purpose of demonstrating that the filings and actions described therein occurred on certain dates." *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 997 (N.D. Cal. 2014).

TFV seeks to use the SAVA records for far more than the dates of Adobe's filings. TFV first asks the Court to infer from a single 2014 filing that there is a "norm[]" of trademark prosecution under which registrants delete delivery-media language at renewal. Dkt. 64 at 8. TFV then asks the Court to infer from that supposed norm that TFV's counsel, a decade later, lacked fraudulent intent when he deleted limitations on TFV's goods. *Id.* at 13. None of this appears on the face of the SAVA records. A single filing by a single registrant cannot establish an industry-wide practice, much less one "not subject to reasonable dispute." Fed. R. Evid. 201(b). And the state of mind of TFV's counsel is precisely the sort of disputed fact that cannot be resolved through judicial notice. *See Khoja*, 899 F.3d at 999.

Even if the Court could consider the SAVA records for the inferences TFV draws from them, those records do not show that TFV lacked fraudulent intent because Adobe's filing and TFV's declarations were made under materially different circumstances:

In 2014, when Adobe filed its SAVA declaration (Dkt. 64-1 at 6–10, 14), the USPTO had not yet created its procedure for amending registrations to account for evolving technology. That

pilot program did not begin until September 1, 2015. *See* U.S. Patent & Trademark Office, Announcement of Pilot Program to Allow Amendments to Identifications of Goods and Services in Trademark Registrations Due to Technology Evolution (Sept. 1, 2015).[5] Prior to that, one could perhaps infer that a trademark practitioner believed in good faith that making modifications to language at renewal to account for evolving technology was permissible. By contrast, TFV submitted the declarations at issue here on August 23, 2024—nearly nine years after the USPTO established the evolving-technology procedure. Dkt. 59 ¶¶ 183, 192; Dkt. 59-4 at 150; Dkt. 59-5 at 157. By then, the proper way to handle goods that were the subject of evolving technology was long established: petition for a waiver and agree to forgo incontestability as to the evolved goods for five years. Dkt. 59 ¶ 192. It is far less plausible to infer that an attorney with more than 20 years of trademark experience who sidestepped a nine-year-old USPTO procedure did so innocently. *See id.* ¶ 190.

In addition, nothing in the record suggests that, when Adobe made its 2014 filing, "SAVA" had become descriptive of fonts or font software, such that Adobe had any reason to fear a validity challenge. By contrast, when TFV submitted its false declarations, descriptive uses of "foundry" to refer to a provider of software were widespread and mounting, leaving TFV's registrations open to challenge. Dkt. 59 ¶ 193; *see id.* ¶¶ 199–215. TFV thus had a motive to deceive the USPTO that Adobe lacked.

At most, TFV's comparison raises a factual dispute about TFV's state of mind. "Questions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment," *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985), let alone on a motion to dismiss. The Court should accordingly deny TFV's request for judicial notice.

**7. The Counterclaims adequately plead a false statement of fact because TFV's declarations misstated the facts rather than setting forth any legal arguments.**

In the Counterclaims, Adobe alleges that TFV made a false statement of fact. In particular, TFV stated in its declarations that "[t]he mark is in use in commerce or in connection with the

[5] https://www.uspto.gov/trademarks/trademark-updates-and-announcements/trademark-user-input.

following goods or services listed in the existing registration" and followed that statement with a description of goods that were not the same as the goods described in the existing registration. Dkt. 59 ¶¶ 184-85.

TFV argues that, rather than making a false statement of fact, it took "a legal position … that turned out to be incorrect." Dkt. 64 at 14. This argument fails because whether the goods described in the declarations are broader than the goods described in the registrations is a fact, not a legal position. One can determine the truth of the statement in the declarations by undertaking a factual investigation rather than an legal analysis, i.e. by comparing the words used to describe the goods in the registrations with the words used to describe the goods in the declarations and assessing whether those words are the same or different. *Compare* Dkt. 59-3 at 149; 59-4 at 146; Dkt. 59-5 at 153 *with* Dkt. 59-3 at 101; Dkt. 59-4 at 97; Dkt. 59-5 at 104. In this case, the descriptions were different because the descriptions in the declarations excluded words of limitation on "computer software" that were included in the registrations. *See id.*

Nor did TFV include any legal argument in its declarations (Dkt. 59-3 at 149; 59-4 at 146; Dkt. 59-5 at 153) or submit any legal briefs with the declarations setting forth a legal theory. *See generally* Dkt. 59-3; Dkt. 59-4; Dkt. 59-5. Rather, the declarations stated as a fact that certain goods were listed in the then-existing registration, when, in truth, a different, narrower set of goods was listed there. Dkt. 59-3 at 149; 59-4 at 146; Dkt. 59-5 at 153.

*Young v. Lumenis, Inc.*, 492 F.3d 1336, 1348 (Fed. Cir. 2007), on which TFV relies (Dkt. 64 at 13), is not on point. There, the plaintiff owned a patent for a method for surgically declawing a cat. *Id.* at 1338. The district court granted summary judgment holding that the plaintiff failed to disclose deposition testimony to the USPTO describing an earlier method for declawing a cat (referred to in the opinion as the "Fossum reference"). *Id.* at 1343. The Federal Circuit reversed because, although the plaintiff initially failed to disclose the testimony, he cured the failure by disclosing the testimony when the examiner still had an opportunity to consider it. *Id.* at 1349. Along with the deposition testimony, the plaintiff provided "attorney argument" that distinguished the Fossum reference and which contained no "gross mischaracterizations or unreasonable

interpretations of the Fossum reference." *Id.* Thus, there was no fraud because the plaintiff did not submit any false or misleading information. *Id.* at 1350.

Here, by contrast, TFV submitted false statements of fact rather than submitting any attorney argument explaining why the USPTO could have broadened the scope of TFV's registrations. *See* Dkt. 59-3 at 144, 149–50; Dkt. 59-4 at 141, 146–47; Dkt. 59-5 at 148, 153–54. The reason why TFV never submitted such a legal argument to the USPTO is obvious: if TFV had done so, the examiner would have been required to reject the declarations and advise TFV to either seek an evolving-technology waiver or delete the goods at issue. Dkt. 59 ¶¶ 188–89. Instead, TFV simply *misrepresented the facts* to *avoid* the need to make a legal argument that would have almost certainly failed.

TFV also contends that mixed questions of law and fact cannot be the basis of fraud, relying only on cases applying principles of ordinary common law fraud. Dkt. 64 at 13 (citing *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004) (managers misstated whether employees were entitled to overtime); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006) (misstatements in demand letters); *Albers v. Yarbrough World Sols., LLC*, 2020 WL 6064334, at *6 (N.D. Cal. Oct. 14, 2020) (employers misstated independent contractor status)). But in the context of inequitable conduct or fraud on the USPTO, it is well established that "if an applicant's legal or interpretive argument is based on distorted facts …, the interpretation exceeds the bounds of acceptable argument and may be subject to a claim for inequitable conduct." *VDF FutureCeuticals, Inc. v. Sandwich Isles Trading Co.*, 2011 WL 6820122, at *6 (D. Haw. Dec. 27, 2011) (quoting *Young*, 492 F.3d at 1349); *see also For Life Products, LLC v. Universal Companies, Inc.*, 2021 WL 2953170, at *2 (W.D. Va. July 14, 2021) (holding plaintiff stated a claim for fraud where defendant falsely characterized its goods as falling solely under trademark International Class 005 instead of both International Classes 003 and 005).

Consistent with the rule in the USPTO context, the common law rule is itself subject to exceptions where the fraudster "stands in a fiduciary or similar relation of trust and confidence to the recipient" or "has some other special reason to expect that the recipient will rely on his opinion." *Miller*, 358 F.3d at 621. Those exceptions apply here. TFV's attorney was in a relationship of trust

and confidence with the USPTO because he owed the USPTO an utmost duty of candor. Dkt. 59 ¶ 181; 37 C.F.R. § 11.303. Furthermore, the Trademark Trial and Appeal Board had already informed the bar that it does not have the resources to check individual declarations for accuracy. *Chutter*, 2021 WL 4494251, at *12. And the USPTO employee that TFV's attorney dealt with should not be required to anticipate that TFV's attorney was using an unexplained legal argument to transubstantiate a false statement of fact about the contents of trademark registrations into a true one.

TFV misstated a fact—the goods listed in its existing registrations—rather than advancing a legal argument for the examiner to evaluate. And even if its statement were treated as a mixed question of law and fact, a legal position built on distorted facts is not protected advocacy before the USPTO. Either way, the Counterclaims adequately plead a false statement of fact.

Because Adobe has pleaded each element of fraud with the required particularity, the Court should deny the motion.

**B. The Court should deny the Motion to Strike fraud-based affirmative defenses because Adobe has adequately pleaded fraud.**

TFV asks the Court to strike Adobe's second affirmative defense, as well as portions of its third and sixth affirmative defenses to the extent they are based on Adobe's fraud counterclaim. Dkt. 64 at 14. TFV's arguments as to those affirmative defenses are wholly derivative of its arguments on the fraud counterclaim and fail for the same reasons.

**C. The Court should deny the Motion to Strike the Third Affirmative Defense because Adobe has adequately pleaded fraud and because Adobe need not establish fraud to raise a descriptiveness defense.**

TFV also asks the Court to strike the portion of Adobe's third affirmative defense that is based on the descriptiveness of its asserted trademarks, arguing that incontestable marks cannot be challenged as descriptive and that Adobe cannot establish that TFV obtained incontestable registrations through fraud. Dkt. 64 at 14. This argument fails for three reasons.

*First*, as discussed above, Adobe has adequately pleaded fraud.

*Second*, Adobe is entitled to raise a descriptiveness challenge to TFV's unregistered trademarks without needing to prove that TFV's registered trademarks were renewed by fraud. In

particular, in addition to alleging that Adobe is infringing TFV's trademark rights that are covered by its existing registrations, TFV alleges that Adobe is infringing TFV's trademark rights in pending applications and the domain name foundry.com. Dkt. 38 ¶¶ 31, 33, 111.

As to TFV's pending trademark applications, these seek rights in AI-related goods and services that are not covered by TFV's trademark registrations. *Compare* Dkt. 38 ¶ 31 *with* Dkt. 38 ¶ 33. Because these trademark applications are for different goods and services than its registrations, TFV's claimed rights in those applications are not incontestable. *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1258 n.14 (S.D. Cal. 2018) ("Plaintiff cannot latch onto the incontestable registrations for goods to insulate the mark from review as applied to services.") (citing *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F.2d 1567, 1568 (Fed. Cir. 1987) ("The only thing that becomes incontestable is the right of the registrant to use the mark for the goods or services for which it is registered.")). Similarly, TFV has no incontestable rights to "foundry.com," and Adobe must be permitted to challenge that mark as descriptive.

*Third*, Adobe has alleged that TFV's registrations are invalid because the marks are generic, an allegation that the Motion to Dismiss does not challenge. Dkt. 59 ¶¶ 140, 199–215, 224–27. A generic mark is subject to cancellation, even if "incontestable." 15 U.S.C. § 1064(3). Thus, Adobe should be permitted to present evidence that, once incontestable status falls away for genericness, the marks are also descriptive.

Accordingly, the Court should deny the motion to strike.

### D. In the alternative, the Court should grant leave to amend.

In the alternative, if the Court were to grant TFV's Motion to Dismiss, the Court should grant leave to amend to permit Adobe to cure any deficiency. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (holding policy freely allowing leave to amend is "to be applied with extreme liberality").

## IV. CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

Dated: October 8, 2026

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Dori Ann Hanswirth*

DORI ANN HANSWIRTH
JOSEPH FARRIS
OSCAR RAMALLO
HAFEEZ KHAN

*Attorneys for Defendant Adobe Inc.*