UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE FOUNDRY VISIONMONGERS LTD.,

Plaintiff,

v.

ADOBE INC.,

Defendant.

Case No. 26-cv-02121-NW

**ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Re: ECF No. 28

On March 11, 2026, Plaintiff The Foundry Visionmongers Ltd. initiated this action against Defendant Adobe Inc., alleging that Adobe's Foundry Firefly product infringes Foundry Visionmongers' registered trademarks. ECF No. 1.[1] On May 6, 2026, Plaintiff filed a motion for preliminary injunction. The motion is fully briefed. ECF Nos. 36, 40. Having considered the parties' briefs, the relevant legal authority, and the arguments advanced by counsel at the August 21, 2026 hearing, the Court GRANTS Plaintiff's motion for a preliminary injunction.

## I. BACKGROUND

Plaintiff builds creative software for the media, entertainment, and gaming industries. Its flagship product, called "Foundry Nuke," is a visual effects ("VFX") application "used to combine, layer, and manipulate footage into a finished shot." Declaration of Alex Foulds, ¶ 4, ECF No. 28-2 ("Foulds Decl."). Plaintiff's products "are relied upon by VFX professionals and technical teams at the world's leading studios—including ILM, DNEG, Walt Disney Animation Studios, Wētā FX, Pixar, Marvel, Netflix, Framestore, and Skydance Animation—as well as independent studios, content creators, and amateur users." *Id.* ¶¶ 6–7. The products are "widely

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

regarded as the industry standard for high-end film and television." *Id.* ¶ 4.

Plaintiff's business is underpinned by its FOUNDRY® brand. It "owns the domain name and a family of FOUNDRY trademark registrations, including the incontestable Registration Nos. 5,619,985, 5,619,986, and 5,619,987, which cover, among other things, computer software for visual effects, digital image creation, 3D modeling, animation, and related content-creation services (collectively, the "FOUNDRY® Marks")." ECF No. 28-1 at 9; Foulds Decl. ¶¶ 17–20; Declaration of Tyler Marandola ¶¶ 3-5, ECF No. 28-26 ("Marandola Decl."). Plaintiff uses the FOUNDRY® marks prominently in its marketing, including on "www.foundry.com" and at industry trade shows. Foulds Decl. ¶¶ 21–22.

On October 20, 2025, Adobe announced the launch of its product, "a generative-AI model capable of producing text, images, video, audio, vector, and 3D content, and fine-tuned using a customer's own data." ECF No. 28-1 at 10. Defendant initially branded this product as "AI Foundry." Plaintiff sent Adobe a cease-and-desist letter two days after the announcement. Defendant then shifted its product's name to "Firefly Foundry." Plaintiff alleges that, despite the name change, Defendant and the press "have consistently shortened that name to 'Adobe Foundry' or only 'Foundry.'" Foulds Decl. ¶¶ 35–37, 40, 53; Marandola Decl. ¶ 7 (compilation of third-party uses).

For context, Plaintiff and Defendant "have a long history of providing competing and complementary products in the content-creation and VFX space." ECF No. 28-1 at 11. The parties market their products for the same "end-to-end media-production workflow," and both parties' products "can be trained on a particular customer's intellectual property to generate on-brand multi-modal content." ECF No. 28-1 at 11. The parties even advertise to customers through the same trade organizations and trade shows.

In April 2026, a few weeks before Plaintiff filed its motion for a preliminary injunction, the parties attended a media and entertainment trade show in Las Vegas, where Adobe's Vice President Hannah Elsakr was a featured speaker and where Defendant "launched . . . Firefly Foundry to scale." ECF No. 28-1 at 12; Declaration of Steven Shapiro ¶ 6, ECF No. 28-18 ("Shapiro Decl."). During one of the conference panels, Elsakr "told the audience that Adobe



United States District Court
Northern District of California

United States District Court
Northern District of California

Foundry was 'not to be confused with Foundry, Foundry.'" *Id.* at 14 (Elsakr said "Foundry" twice, the Court understands it was for emphasis). Plaintiff's employee was a member of the same conference panel. *Id.* Defendant also advertised "Adobe Firefly Foundry" on the Las Vegas MSG Sphere during the show. *Id.* at 13.

Since the launch of Defendant's Firefly Foundry product, the parties have exchanged correspondence, but according to Plaintiff, Adobe declines to alter its practices. Plaintiff argues that Adobe has instead intensified its use of the term "Foundry," including by seeking to register "Firefly Foundry" as its own trademark.

Plaintiff initiated this case on March 11, 2026, and filed its motion for a preliminary injunction on May 6, 2026. ECF Nos. 1, 28.

## II. DISCUSSION

Plaintiff asks this Court to enter a preliminary injunction enjoining Adobe from using the term "Foundry" on any goods and services, registering any trademark incorporating the "Foundry" mark, and making any representations that are likely to mislead the public that Plaintiff's products are connected to Defendant.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). A party "seeking a preliminary injunction must establish [1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest." *Id.* at 20 (citations omitted). The Ninth Circuit "employ[s] a 'sliding scale test,' which allows a strong showing on the balance of hardships to compensate for a lesser showing of likelihood of success." *Where Do We Go Berkeley v. Cal. Dep't of Trans.*, 32 F.4th 852, 859 (9th Cir. 2022) (citing *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)).

In evaluating whether Plaintiff has met its burden to obtain relief, the Court first addresses the *Winter* elements, beginning with whether Plaintiff is likely to succeed on its trademark infringement claim.

United States District Court
Northern District of California

### A. Likelihood of Success

Based on the briefs and evidence submitted by the parties, the Court finds that at this stage of the litigation, Plaintiff has demonstrated that it is likely to succeed on the merits of its trademark infringement claim – a claim that is foundational to its remaining claims and allegations.[2]

To prevail on a trademark infringement claim, Plaintiff must establish that (1) it has a protectable ownership interest in the mark, and (2) Adobe's use is likely to cause customer confusion. *LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*, 124 F.4th 1122, 1125 (9th Cir. 2024) (citing 15 U.S.C. §§ 1114(1)(a), 1125(a)). Defendant challenges only the latter element. Plaintiff's likelihood of success therefore turns on whether Adobe's use of the "Foundry" mark is likely to confuse consumers.

The relevant inquiry is "whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). The Ninth Circuit has recognized two distinct theories of consumer confusion: "forward confusion" and "reverse confusion." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). "Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder." *Id.* "By contrast, reverse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one." *Id.*[3] More specifically, "reverse confusion occurs when a person who knows only of the well-known junior user [here, Adobe] comes into contact with the lesser-known senior user [here, Foundry Visionmongers], and because of the similarity of the marks,

---

[2] Plaintiff brings claims for Federal Trademark Infringement pursuant to 15 U.S.C. § 1114(1), Federal Unfair Competition pursuant to 15 U.S.C. § 1125(a), trademark infringement under California law, and violation of California Bus. & Prof. Code §§ 17200 et seq. for unfair competition. Compl., ECF No. 1.

[3] The first company to use a mark is the "senior user," and the later user is the "junior user." *Brookfield Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1046 (9th Cir.1999). Here, there is no dispute that Plaintiff was the first to use the FOUNDRY mark and is the senior user.

mistakenly thinks that the senior user is the same as or is affiliated with the junior user." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021) (citing *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998)). "This can occur when 'the junior user's advertising and promotion so swamps the senior user's reputation in the market that customers are likely to be confused into thinking that the senior user's goods are those of the junior user." *Id.* (quoting 4 McCarthy on Trademarks and Unfair Competition § 23:10 (5th ed. 2020) (citations and footnotes omitted)).

Plaintiff primarily advances a reverse confusion theory as it is mainly concerned that "Adobe's junior use of FOUNDRY is likely to create an association between Foundry [Visionmongers]'s FOUNDRY Marks and Adobe, overtaking and swamping Foundry's senior, protected use of the FOUNDRY Marks in connection with its goods and services." Compl. ¶ 53. The potential for reverse confusion is high, according to Plaintiff, "given the size of Adobe and its status as a market leader" and because "Adobe's use of the Infringing Marks is likely to misdirect users to Adobe's Firefly Foundry product to the detriment of Foundry." *Id.* ¶ 54.

To determine whether Adobe's use of "Foundry" is likely to cause reverse confusion, the Court considers the eight *Sleekcraft* factors: "(1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *Doctor's Best, Inc. v. Nature's Way Prods., LLC*, 143 F.4th 1101, 1110 (9th Cir. 2025); *see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979). The *Sleekcraft* factors are "illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010). They are "intended as an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011).

The Court addresses each factor in turn, finding that six of the eight factors weigh in Plaintiff's favor, one factor weighs in Defendant's favor, and one factor is neutral.

United States District Court
Northern District of California

**1. Strength of the Mark**

In assessing the first *Sleekcraft* factor, the strength of a mark is evaluated both conceptually and commercially. *Fortune Dynamic*, 618 F.3d at 1032. A mark increases in strength when it is more likely to be "remembered and associated in the public mind with the mark's owner." *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 757 (9th Cir. 2018) (quoting *Network Automation*, 638 F.3d at 1149). Stronger marks are afforded greater protection than weak marks. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1126 (9th Cir. 2014).

Plaintiff asks the Court to focus on the commercial strength of its mark. It points to "the success of Plaintiff's industry-standard FOUNDRY® branded tools" and the recognition of "Plaintiff [a]s a household name in the VFX industry." ECF No. 28-1 at 21. At least in the VFX industry, Foundry Visionmongers' mark is commercially strong. Separately, an "important question in a reverse confusion case is 'whether the *junior* mark is so [commercially] strong as to overtake the senior mark.'" *Ironhawk*, 2 F.4th at 1162–63 (quoting *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 n.2 (9th Cir. 2000)). Here, that is a possibility. While Plaintiff's senior mark is commercially strong, Defendant's mark is soon likely to also be commercially strong. Adobe has widely advertised Firefly Foundry in trade shows and with major advertising campaigns, strengthening of its own mark. *IYO, Inc. v. IO Prods., Inc.*, No. 25-CV-04861-TLT, 2025 WL 3501003, at *8 (N.D. Cal. June 20, 2025), *aff'd,* No. 25-4028, 2025 WL 3471705 (9th Cir. Dec. 3, 2025) (finding that junior user was likely to "swamp the reputation" of the senior user where defendants had already gained some publicity of their mark, which had made defendant's mark commercially strong too). Defendant's Firefly Foundry mark has the potential to swamp FOUNDRY® given Adobe's significant marketing budget and advertising campaign underway.

The Court finds that this factor weighs in favor of a likelihood of confusion.

**2. Proximity or Relatedness of the Goods**

The second *Sleetcraft* factor is the most contested. With the second factor, courts consider that "[g]oods and services are related when they are complementary, sold to the same class of purchasers, or similar in use and function." *Ironhawk*, 2 F.4th at 1163 (citing *Sleekcraft*, 599 F.2d at 350). The parties do not have to be direct competitors for their goods to be related. *Id.* Instead,

"[r]elated goods (or services) are those 'which would be reasonably thought by the buying public to come from the same source if sold under the same mark.' " *Id.* (citation omitted).

Defendant attempts to differentiate the parties' services and products, arguing that they are not similar because "Firefly Foundry is a bespoke service that can only be offered by a company that, like Adobe, has the capability to build generative AI models and teams of engineers and creative professionals available to work personally with the client to customize those models" while Foundry is "known for non-custom, off-the-shelf software." ECF No. 36 at 19. Adobe explains that it offers "a service for developing a bespoke generative AI model," with a heavy emphasis on the AI attributes of its service. Defendant additionally points to the significant cost spread between the parties' products.

Adobe's argument "overemphasizes [the] differences in [the parties'] principal lines of business," rather than focusing on whether consumers are likely to associate the products or services. *Brookfield Commc'n.*, 174 F.3d at 1056; *see also Dreamwerks Prod. Grp.*, 142 F.3d at 1131 (explaining that "the relatedness of each company's prime directive isn't relevant"). Adobe's argument ignores the "competitive proximity of their products" and that "the products are used for similar purposes." *Id.* (finding that relatedness can be found where "both companies offer products and services relating to the entertainment industry generally, and their principal lines of business both relate to movies."). The parties' products and services are similar enough that it is likely that consumers would associate them. Both products contain software for content creation. Both parties promote their products within the media and entertainment industry. And, both products offer VFX and animation capabilities. This factor weighs in favor of a likelihood of confusion.

**3. Similarity of the Marks**

The Court turns to the third *Sleekcraft* factor: similarity of the two marks. "Similarity is best adjudged by appearance, sound, and meaning." *Fortune Dynamic*, 618 F.3d at 1032 (internal quote omitted). The "marks must be considered in their entirety and as they appear in the marketplace." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). Similarities are weighed more heavily than differences, and "[o]bviously, the greater the similarity

United States District Court
Northern District of California

between the two marks at issue, the greater the likelihood of confusion." *Id.*

Defendant argues that its Firefly Foundry mark is not similar to Plaintiff's FOUNDRY® mark because Adobe uses "Firefly Foundry" alongside its house mark, Adobe. But as the Ninth Circuit has described, "in a reverse confusion case the junior user's use of a house mark can also aggravate confusion by reinforcing the association between the mark and the junior user." *Ironhawk*, 2 F.4th at 1164. The Ninth Circuit explained in *Americana Trading* that where a junior user displayed its house mark next to the mark in contention, the use of the house mark "may serve to create reverse confusion that [the competitor], and not [plaintiff], is the source of" the plaintiff's mark. *Americana Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284 (9th Cir. 1992) (holding that there was the potential for confusion in where a junior user used its house mark alongside the mark "Wedding Bear," where "Wedding Bear" was the trademark of the senior user). Even though the marks are not identical, the semantic overlap between the marks (both include the word "foundry"), combined with how Adobe presents its house mark alongside the contested mark, points towards a likelihood of confusion.

**4. Evidence of Actual Confusion**

In evaluating the fourth factor, evidence of actual confusion is not required to show a likelihood of confusion under the Lanham Act. *Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1170-71 (9th Cir. 2025). At the preliminary injunction stage, parties often have not had the opportunity to amass "significant evidence of actual confusion." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072-73 (9th Cir. 2014). Plaintiff asks the Court to find the lack of clear evidence of actual confusion to be a neutral factor given the short time that Firefly Foundry has been on the market. The Court agrees. Given that Adobe caters to enterprise customers, requires customers to meet with sales representatives, and offers its product at a significant cost, indicating strategic and low-volume sales, it is premature for the Court to place weight on the fact that Plaintiff has not presented examples of actual confusion. This factor is neutral.

**5. Marketing Channels Used**

The Court next assesses the marketing channels used by the parties because "[c]onvergent marketing channels increase the likelihood of confusion." *Yuga*, 144 F.4th at 1171 (quoting

*Sleekcraft*, 599 F.2d at 353). "In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful*, 775 F.3d at 1130 (internal citation omitted). Here, both parties acknowledge that "the companies sell to some of the same customers" and attend the same trade shows. ECF No. 36 at 21. Defendant argues that even with some marketing overlap, there is a low likelihood that the overlap will contribute to confusion because Firefly Foundry customers must contact Adobe sales representatives to complete an enterprise purchase and because the significant cost differences between the parties' products (approximately $100,000 versus $1,000,000) ensures that any customer "overlap would [be] limited to a subset of Foundry Visionmongers customers." *Id.* But this argument does not capture the reputational and associational concerns with marketing the two products in the same channels. Plaintiff points to the companies being members of the same trade organizations, appearing at four of the same trade shows in the last year, sending employees to appear on the same panels at trade shows, directing marketing towards media and entertainment uses, and incorporating examples from media and entertainment successes in respective marketing campaigns. This *Sleekcraft* factor also strongly favors a likelihood of confusion.

**6. Type of Goods and Degree of Consumer Care**

The Court finds that the type of goods and degree of consumer care factor weighs against a likelihood of confusion. This factor asks "whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines." *Ironhawk*, 2 F.4th at 1167. The degree of consumer care analysis typically focuses on the degree of care consumers exercise in making a purchase. *See Yuga*, 144 F.4th at 1171. The parties acknowledge that their customers are sophisticated. And, Defendant points out that Firefly Foundry is not available to the general public because it is only offered to enterprise clients. To the extent they could be confused, Adobe's enterprise clients are likely to have "the opportunity to realize their mistake at multiple points" given that they are engaging in enterprise deals with Adobe. *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1019 (N.D. Cal. 2015) (finding that threshold processes required to access the parties' services cuts against likelihood of confusion). While the Court understands the

risk of product association confusion, on balance, this factor weighs against a likelihood of confusion. *Compare Sleekcraft*, 599 F.2d at 353 ("The hallmark of a trademark owner's interest in preventing use of his mark on related goods is the threat such use poses to the reputation of his own goods.") *with id.* ("When the buyer has expertise in the field," or "when the goods are expensive, the buyer can be expected to exercise greater care in his purchases.").

**7. Defendant's Intent**

The Court next addresses whether Adobe had the intent to infringe on Foundry Visionmongers' trademark. "This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *Ironhawk*, 2 F.4th at 1167–68 (internal citations omitted). In the reverse confusion context, courts "ask whether there is some evidence that the junior user, when it knew of the senior user, was at fault for not adequately respecting the rights of the senior user." *Id.* (quoting 4 McCarthy on Trademarks and Unfair Competition § 23:10 (5th ed. 2020)). The Ninth Circuit has instructed that "[i]ntent can be shown . . . 'by evidence that, for example, the [junior] knew of the mark, should have known of the mark, intended to copy the [senior], failed to conduct a reasonably adequate trademark search, or otherwise culpably disregarded the risk of reverse confusion.'" *Id.* (quoting *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 934–35 (9th Cir. 2017). Here, Plaintiff argues that Adobe had actual, or at least constructive, knowledge of Foundry Visionmongers' trademark before launching Firefly Foundry. Plaintiff contends that Defendant knew of the trademark because the "parties appear at the same trade shows, offer related products, and use one another's technology." ECF No. 28-1 at 24. The Court agrees and finds that based on the evidence presented, Plaintiff has established that is likely that Defendant "culpably disregarded the risk of reverse confusion" because Adobe knew of Plaintiff's mark before launching its own product and did not make accommodations or differentiate its mark. *Ironhawk Techs.*, 2 F.4th at 1167–68. This factor weighs in favor of a likelihood of confusion.

**8. Likelihood of Expansion of Product Lines**

Finally, the Court turns to the last *Sleekcraft* factor to assess whether there is "a 'strong possibility' that either party may expand his business to compete with the other." *Sleekcraft*, 599

F.2d at 354. If so, this factor "will weigh in favor of finding that the present use is infringing." *Id.* The parties acknowledge that they compete with one another generally via other product lines, but Defendant posits that Firefly Foundry specifically does not directly compete with Plaintiff's products. ECF No. 36 at 20, 28. Adobe tries to hem its products into the category of bespoke AI models, and argues that "[j]ust because certain of Foundry Visionmongers' products may incorporate some artificial intelligence technology (such as via plug-ins) or integrate with artificial intelligence technology does not mean that that offering is the same as Adobe's service for creating bespoke AI models." ECF No. 36 at 28.

Defendant's argument misses the broader point that the parties have each taken steps towards each other's business: Plaintiff recently acquired an AI content generation company that it is placing under its Foundry brand, and Defendant has recruited VFX employees to strengthen Firefly Foundry's application to the VFX space. There is a strong possibility that either party will expand its business in the direction of the other, and accordingly, this factor weighs in favor of a likelihood of confusion.

* * *

In sum, the majority of *Sleekcraft* factors weigh in favor of a likelihood of confusion. Accordingly, the Court finds that Foundry has established a likelihood of success on the merits of its trademark claim.

### B. Remaining *Winter* Factors

The Court next addresses the remaining *Winter* factors: irreparable harm, the balance of the equities, and the public interest.

Having shown a likelihood of success on the merits of its trademark infringement claim, Plaintiff is "entitled to a rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a); *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 694 (9th Cir. 2022). Plaintiff also argues that it will suffer irreparable harm due to business reputational damage because "Adobe's use of an identical mark for an overlapping AI content-creation product borrows that reputation and places its quality" outside of Foundry's control. ECF No. 28-1 at 27. Plaintiff worries about Adobe's larger marketing budget drowning out Foundry Visionmongers' distinctiveness, and points to the

fact that "Plaintiff spends approximately $1 million per year marketing the FOUNDRY® brand; Defendant reportedly spent more than $1 billion on marketing in 2025 and intends to make 'Foundry' 'seamlessly available across the Adobe ecosystem'." *Id.*; Foulds Decl. ¶¶ 41, 56, 60–61. In light of these facts and the rebuttable presumption, Plaintiff has shown that Adobe's continued use of "Foundry" threatens Plaintiff's "control over [its] business reputation and damage to goodwill," which is a type of irreparable harm. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (citation omitted).[4]

The balance of equities tips in Plaintiff's favor and an injunction is in the public interest. Plaintiff risks reputational harm and loss of control over its brand. Adobe, on the other hand, risks monetary costs – albeit substantial costs – associated with removing the "Foundry" branding from its product. Defendant has not explained how these harms outweigh the harm Plaintiff is likely to suffer absent an injunction. Additionally, Adobe's harm arises from its own likely infringing use of a registered mark. *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration on an appeal from a preliminary injunction."), *superseded by statute on other grounds.* Adobe is not at risk of losing its business due to not being able to use the Foundry mark. It must only rename its product, which it has already done once previously after Foundry sent an initial cease-and-desist letter. Finally, "[a]n injunction that prevents consumer confusion in trademark cases . . . serves the public interest." *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x 633, 636 (9th Cir. 2013) (citing *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009)).

Adobe does not request that Foundry Visionmongers provide a bond or security pursuant

[4] Adobe argued in its brief and during the hearing that Plaintiff's delay in filing this motion for a preliminary injunction undermines any argument that this harm is urgent and irreparable. The Court disagrees. Plaintiff explained during the hearing that only a few days passed between the date of the Las Vegas trade show – where Adobe spoke about Firefly Foundry on a panel, advertised Firefly Foundry on the MSG Sphere, and met with prospective Firefly Foundry customers – and the date Foundry Visionmongers filed this motion. Plaintiff adequately explained that it had not grasped the full extent of Adobe's roll out or the likelihood of confusion until that trade show. *See* ECF No. 40 at 7.

to Federal Rule of Civil Procedure 65(c). *See* ECF No. 36. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003) (the affected party bears the burden of "presenting evidence that a bond is needed."). Given the lack of any request, the Court declines to set a bond here.

## III. SCOPE OF INJUNCTION AND CONCLUSION

The Court GRANTS Plaintiff's motion for a preliminary injunction.

"'District courts have broad latitude in fashioning equitable relief when necessary to remedy an established wrong.'" *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (quoting *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010)). "The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" *Id.* (quoting *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009)). "The status quo ante litem refers not simply to any situation before the filing of a lawsuit, . . . [which c]ould lead to absurd situations, in which plaintiffs could never bring suit once [unlawful] conduct had begun," but "instead to 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc..*, 202 F.3d at 1210 (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). Equitable relief may "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994)).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

In keeping with the principle of granting relief that is "no more burdensome . . . than necessary," the Court orders the parties to meet and confer within 10 days of this Order to discuss how and on what timeline Adobe will cease using in commerce any mark consisting of or containing the term "Foundry." Within 10 days, the parties shall file either a stipulation regarding the scope of the injunctive relief, including how and when Adobe will comply, or, if the parties cannot reach an agreement, the parties shall file a joint submission not to exceed 6 pages (a maximum of 3 pages per side) with each party outlining the proposed scope of the preliminary injunctive relief, and the timing of Adobe's compliance.

**IT IS SO ORDERED.**

Dated: November 15, 2026

Noël Wise
United States District Judge